## TEXAS & PACIFIC RAILWAY COMPANY v. J. J. RANDLE.

Delivered February 12, 1898.

**1. Practice on Appeal.**

A verdict will not be disturbed on appeal on the ground that it is against the preponderance of the evidence.

**2. Carriers—Connecting Lines—Liability on Through Shipment.**

A connecting carrier who receives freight from another carrier, under a contract of through carriage within the State, recognized, acquiesced in, or acted upon, by both carriers, is liable to the owner, under the Connecting Carriers Act of 1895 (Rev. Stats., art. 331a), for damages to the freight, whether received before or after it received the same, although article 4535 requires one railroad company to receive freight from a connecting line, as this does not preclude from receiving and carrying it under an independent contract of its own.

**3. Same—Connecting Carriers Act Not Unconstitutional.**

The constitutional provision that the privileges and immunities of persons shall not be abridged, and that they shall not be deprived of property without the process of law, is not violated by the Connecting Carriers Act (arts. 331a, 331b, Rev. Stats.), providing that all of several connecting carriers shall be liable for damages received on any line during shipments, where the goods are shipped under a contract

of through carriage which is recognized, acquiesced in, or acted upon, by all the connecting carriers.

**4. Damages—Unborn Colt.**

No recovery can be had against a common carrier for the loss of an unborn colt, through negligence of the carrier during shipment of the mare, although recovery may be had for the enhanced value of the mare resulting from her being with foal.

**5. Evidence of Value—Unaccepted Offer.**

An unaccepted offer for a colt at the time the mare was bred is inadmissible to show the value of the colt, where it is lost before its birth through the negligence of a common carrier over whose road the mare was shipped.

APPEAL from Lamar. Tried below before Hon. CHAS. S. NEATHERY.

*T. J. Freeman, Head, Dillard & Muse,* and *Barton Dillard,* for appellant.

*Lightfoot, Denton & Long,* for appellee.

FINLEY, CHIEF JUSTICE.—This suit was filed by J. J. Randle in the County Court of Lamar County, Texas, on November 11, 1896, to recover damages alleged to have been occasioned to stock shipped by him from Hillsboro, Texas, to Blossom, Texas, over the Missouri, Kansas & Texas Railway Company's lines from Hillsboro to Bells, Texas, and from Bells to Blossom, over the line of the defendant, the Texas & Pacific Railway Company. The petition alleged that March 12, 1896, the Missouri, Kansas & Texas Railway Company executed and delivered to plaintiff its bill of lading to transport certain live stock over its road to Bells, Texas, and there to deliver to its connecting line to be transported by it to Blossom, Texas. That defendant's line connected with the Missouri, Kansas & Texas Railway at Bells; that plaintiff paid the Missouri, Kansas & Texas Railway Company the freight, and that the defendant acted upon, recognized, and acquiesced in said bill of lading and carried said freight from Bells, Texas, to Blossom, Texas, on same. That said property was received by said Missouri, Kansas & Texas Railway Company in good condition, but when it reached Blossom they were gaunt, bruised, and injured by reason of the rough, reckless, and negligent handling of same on the road, and some of said stock died by reason of such injuries so received, to plaintiff's damages in the sum of $505.

The defendant answered by general exceptions, general denial, and special answer:

(1). It is a corporation duly incorporated under the laws of the United States of America, and that the Missouri, Kansas & Texas Railway Company of Texas is a corporation incorporated under the laws of Texas, and that said corporations were not, are not now, and never were partners nor in copartnership as to said shipment, and that the contract of the Missouri, Kansas & Texas Railway Company on which said stock was shipped was not in its contract.

(2). That if plaintiff's property received any damage, none of same occurred on the line of this defendant, but was while same was being

hauled by the Missouri, Kansas & Texas over its own line. That said road has no line to Blossom, and this defendant received said shipment at Bells as one connecting carrier from another, as under the laws of Texas it is bound to do; and not by virtue of any contract, agreement, partnership, or undertaking between it and said Missouri, Kansas & Texas Railway, and said railway had no authority to make any contract binding on this defendant

(3). And plea of contributory negligence on the part of plaintiff in loading and unloading said cars, as he was bound to do under his agreement with the Missouri, Kansas & Texas Railway Company.

By supplemental petition plaintiff excepted generally to defendant's answer, and denied generally the allegations therein. The cause was tried by a jury, which resulted in a verdict and judgment for plaintiff in the sum of $195. From this judgment the railway company has appealed.

*Opinion.*—The first assignment of error is to the effect that the verdict was rendered against the preponderance of the evidence, setting out the evidence upon which the proposition is based.

If this proposition should be admitted, it would not furnish a good reason for the reversal of the judgment. The question of the preponderance of the evidence is for the trial court, and this court will not reverse a judgment upon the ground that the evidence preponderates against the verdict. There are, however, questions of law presented under this assignment which we think it proper to consider, in view of the disposition to be made of the case.

It is contended that the evidence did not warrant the conclusion that appellant received and transported the stock over its line of railway under the contract of shipment entered into between the shipper and initial carrier, the Missouri, Kansas & Texas Railway Company. The evidence in this case shows that appellee Randle shipped his stock from Hillsboro to Blossom, Texas, by way of Bells, Texas, and that he prepaid the freight—$50—from Hillsboro to Blossom, Texas; that said Randle did not pay appellant any money on his shipment, and did not have any bill of lading from appellant; that the Missouri, Kansas & Texas Railway Company of Texas paid appellant $13.85 for hauling said shipment, and that this shipment was hauled on the through rate fixed by the railroad commission of Texas, and appellant got its agreed division of this through rate; that said shipment was taken on a through way-bill, reading from Hillsboro to Blossom; that the damage to the stock was on the line of the Missouri, Kansas & Texas Railway Company; that the bill of lading between appellee and the Missouri, Kansas & Texas Railway Company agrees to haul the cars, consigned to J. J. Randle at Blossom Prairie, from Hillsboro to Bells at the rate of $50 per car from Hillsboro to destination; and further provides, that if the destination of such cars be beyond the line of the Missouri, Kansas & Texas Railway Company of Texas, then the Missouri, Kansas & Texas Railway Company

agrees, and it and each connecting carrier in turn is thereby authorized to deliver said cars to its connecting carrier for transportation under the terms, stipulations, limitations, and agreements contained in said bill of lading, and each and every carrier receiving said cars for transportation shall be deemed to adopt the terms and conditions thereof, and shall be entitled to all the exemptions, etc., therein contained.

It is further shown that there was no partnership existing between the two railway companies, and that no actual agreement was entered into between them in regard to this shipment.

Where one common carrier receives freight from another connecting common carrier, under a contract of through carriage within this State, recognized, acquiesced in, or acted upon by such carriers, they are both alike liable under our statute to the owner, shipper, or consignee, as the case may be, for damages to such freight, regardless of the question upon which line the damage is inflicted. Rev. Stats., art. 331a. But it is insisted that appellant was compelled by statute (Revised Statutes, article 4535) to receive the freight from the connecting line—the Missouri, Kansas & Texas Railway Company—in the manner in which it did, and therefore its action in receiving and carrying the freight without an independent contract of its own in relation to the shipment can not be regarded as evidence tending to show that it "recognized, acquiesced in, or acted upon" the original contract of the initial carrier. The article referred to does require common carriers to receive freight and passengers from connecting carriers, and prohibits discrimination in charges, terms, and conditions; but it does not require that common carriers shall receive and carry freight and passengers under the contract made by the initial carrier. While the law compels the carrier to receive freight and passengers from the connecting carrier, and prohibits discrimination in favor of one connecting carrier and against another, it leaves the carrier free to transport the freight or passenger under the contract of the initial carrier, or one of its own making, at its option. This freedom must be exercised, however, in subordination to the requirement that no discriminations shall be made. We think the evidence tended to show that appellant *recognized, acquiesced in, and acted upon the* contract of shipment made by the Missouri, Kansas & Texas Railway Company in receiving and transporting appellee's stock, and that appellant's contention to the contrary is not well founded.

The second assignment of error presents the proposition, that articles 331a and 331b are violative of the Constitution of this State and of the United States, in that they abridge the privileges and immunities and deprive persons of property without due process of law, and deny the equal protection of the law within the State.

This proposition is based upon the idea that these statutory provisions make a railroad liable for damages to goods transported by it, which were received from a connecting line, though the injury to the goods may have occurred before they reached its line, while it has not contracted to become liable for such damages and has committed no tort

rendering it liable. This is an incorrect construction of the statutes, as we have already seen. These provisions fix the liability of the carrier for damages, not inflicted while being transported upon its line, only in the event the goods are shipped under a contract of through carriage, which is recognized, acquiesced in, or acted upon by the subsequent receiving carrier. If the latter takes the shipment under the original contract, makes no contract of its own, it becomes bound by the terms of the contract of the initial carrier. We fail to discern anything harsh or oppressive in the terms of these provisions, but we regard them as eminently just and demanded by the interests of the general public. There is nothing in them which authorizes one common carrier to force its contracts of shipment upon another common carrier, and in no conceivable sense do they contravene the provisions of the Constitution of this State or of the general government.

2. One of the animals shipped was a mare in foal. Damages were alleged and sought to be recovered for injuries to the mare and injuries resulting in death to the colt, which was born some nineteen days after the delivery of the animals at the place of destination. The plaintiff wes permitted to testify as to the condition of the colt at the time of its birth, showing that it was injured and prematurely born, and that it died from these causes.. And further, that he was offered $100 for the colt at the time the mare was bred, and that the colt would have been worth that sum had it come at the proper time and had it been uninjured. This evidence was objected to as speculative and remote, and we are of the opinion that the court should have excluded the evidence. The parties contracted for the shipment of the mare; the colt had no independent existence at that time, but was essentially a part of the mother which afterward gave it birth. The value of the mare at the time of shipment may have been and doubtless was enhanced by the value of her foal. Her value in that condition should have been alleged and shown by the evidence, and then a recovery would have been authorized for the amount of her depreciation in value by reason of injuries received while in transit, through want of proper care on the part of the railway company. This qualification applies only to the mare, by reason of her condition. It would be going into the field of speculation entirely too far to permit a recovery for the value of the colt, unborn at the time of the shipment, upon the basis that it would have been born perfect in all respects, but for the injuries sustained by its mother during transportation. There are too many contingencies which might affect the foal to justify its being treated as an independent element of the shipment.

Independent of this view, the evidence of what appellee was offered for the colt was not proper evidence of the value of the colt. A mere unaccepted offer can not be shown as evidence of value. 3 Sedg. on Dam., sec. 1299 (8 ed). What is here said as to this evidence applies to the offers made for the mare as testified to by the plaintiff, and this testimony should have been excluded by the court.

We find no other errors requiring notice. On account of the errors pointed out, the judgment must be reversed.

*Reversed and remanded.*