Texas and Pacific Railway Company v. D. H. Lynch.

Decided May 5, 1906.

**Drover's Pass—Article 331a, Rev. Stats., 1895, Construed.**

A railroad company contracted with plaintiff in the usual form to transport one carload of horses and the person in charge thereof from S., a station upon its line to its terminus, the same being a junction point with the defendant company; the horses were consigned to the plaintiff at T., a station upon defendant's road; the agent at S. issued a through waybill, showing the shipment to be from S. to T. via defendant's road; the shipping contract entitled the person accompanying the stock to return transportation to S. Evidence considered, and held sufficient to show that the defendant company, under the operation of art. 331a, Rev. Stats. of 1895, acted upon, ratified and made its own for all purposes the contract made by the initial carrier, and the person in charge of said horses was entitled to return passage over defendant's road.

Appeal from the District Court of Wichita County. Tried below before Hon. A. H. Carrigan.

*W. L. Hall* and *Spoont, Thompson & Barwise,* for appellant.

*Montgomery & Hughes,* for appellee.

CONNER, CHIEF JUSTICE.—For the third time this case appears before us on appeal from judgments in favor of appellee upon his claim for damages because of the ejection of his person from a passenger train near Texarkana, Texas. See 7 Texas Ct. Rep., 27, and 13 Texas Ct. Rep., 229. So far as it is deemed necessary to here state, the facts show that on December 11, 1901, the Fort Worth and Denver City Railway Company, in the usual form of live stock shipping agreements, contracted with appellee to transport one carload of horses and the person in charge thereof from Seymour, Texas, to Fort Worth, Texas. The horses, on the face of the contract, were consigned to appellee at Texarkana. The agent at the same time issued what is termed a through waybill showing the shipment to be "from Seymour, Texas, to Texarkana, Texas, via Fort Worth T. & P." The contract also entitled the person accompanying the stock to transportation in returning to the initial point of shipment upon presentation of "return transportation request issued with the contract." Appellee accompanied his horses and upon arrival in Fort Worth they were unloaded and fed in the yards of the appellant company, which afterwards reloaded and transported them, together with appellee, to Texarkana. No new contract was executed at Fort Worth and appellee testified that no request therefor was made. Appellee further testified that one of appellant's agents at Fort Worth notified him of the hour when the shipment from that point would begin, and that when called upon, while in the yards at Fort Worth, by the conductor of the train to produce his shipping contract, the one issued at Seymour was exhibited by appellee, to which the conductor replied that it was all right, and he and his horses were thereupon and thereafter transported without objection. The evidence further shows that the through freight charges from Seymour to Texarkana, together with the charge for feeding at Fort Worth were paid by appellee to appellant's agent at Texarkana. As on former trials, it was further shown that when ready to return appellee presented himself to appellant's agent at Texarkana, with whom he was personally acquainted, and inquired "Where is the man that fixes up my contract?"; that he was referred to a young man sitting at a desk, to whom the contract under consideration was handed, accompanied by appellee's statement that he "wanted" him "to fix this contract up to get back to Fort Worth;" that this young man examined, stamped and returned the contract, stating that it was "all right;" that such evidence of appellee's right to ride was not recognized by the conductor of the returning train and appellee was ejected under circumstances substantially as stated in our former opinion. On the last trial, however, it was further shown that appellee on several former occasions had been permitted to return over appellant's line from Texarkana to Fort Worth, on presentation of the same kind of contract as the one in question, after being stamped as had been

done in this instance, although such seems not to have been in accord with the general rule adopted by the appellant company.

Numerous assignments of error are now urged, but we think most, if not all material questions thereby presented have been decided by us on former appeals adversely to appellant's contentions, and that therefore we can dispose of the present appeal very briefly and in general terms.   We conclude that the evidence is sufficient to establish the alleged fact that appellant, under the operation of Revised Statutes, article 331a, acted upon, ratified, and made its own for all purposes of the shipment, the original contract made by the Fort Worth and Denver City Railway Company at Seymour.   See Texas & P. Ry. Co. v. Lynch, 7 Texas Ct. Rep., 29; Texas & P. Ry. Co. v. Randle, 44 S. W. Rep., 603; Delaware, L. & W. Ry. Co. v. Ashley, 67 Fed. Rep., 212.   If so, appellant became thereby obligated to return appellee from Texarkana to Fort Worth upon compliance with such reasonable regulations as related to that subject.   This too, irrespective of the contractual obligation, became the duty of appellant by virtue of section 3 of Commodity Tariff No. 8-A of the Railroad Commission of Texas, shown in evidence, to the effect that in shipments of live stock between points in this State, one man in charge of a single car of horses should be passed each way.

The contention pressed upon us with greatest insistence, however, is to the effect that the evidence of appellee's right to return—the stamped Fort Worth & Denver City contract—was not such as was required either by the contract or by the regulations of the appellant company, and that therefore appellant's conductor was authorized to eject appellee.   The regulation of the Fort Worth and Denver required appellee to present to its agent at Fort Worth the request for return transportation attached to the contract.   It is evident that this was inapplicable to request for return transportation at Texarkana and could hardly have been in contemplation on appellant's part in continuing the shipment as it did from Fort Worth.   The regulation of the appellant company applicable to live stock shipments made by virtue of its own contracts was for the person who accompanied the stock to present the contract to the agent at destination, who was directed to require the shipper to sign the "drover's pass" endorsed upon the back of the contract as a means of enabling conductors to whom it should be presented to identify the shipper.   These regulations also seem inapplicable to this case, for here the shipment from Fort Worth was made without requiring the execution of one of appellant's contracts.   If appellant had formulated or promulgated a rule that strictly applies to shipments of the character in question, it is not noted in its brief, or if so, we have overlooked it. Appellee testified, as before stated, that on several former occasions he had made shipments as in this instance, and that his Fort Worth and Denver City contract, stamped by appellant's agent at Texarkana as in the case before us, had been acted upon and recognized by appellant's conductors as entitling appellee to return passage to Fort Worth.   This evidence may be said to tend to show the customary manner of furnishing shippers evidence of right to return passage recognized or adopted by appellant's agent at Texarkana in shipments made under contracts of other lines of railway; but whether so or not, appellee testified that

he was without knowledge that other evidence of right was required. It is evident that appellant's terminal agent was clothed with at least the apparent authority to require of appellee the performance of such acts as necessary to entitle him to return passage and to furnish appellee with the proper evidence of his right to such return. Appellee's identity was known to appellant's agent at Texarkana and his evidence shows that he in good faith presented to the conductor who ejected him the evidence of his right as a passenger that had been furnished for that purpose by the agent. Such conductor for aught that appears, could easily have ascertained the fact of appellee's identity—the end and aim of the regulations so greatly emphasized—and, as held by us on former appeals, in the absence of a different regulation to appellee that applied to this character of shipment, we think he was lawfully upon appellant's train, and that his ejection was wrongful, notwithstanding the fact that appellant's conductor may have been acting in good faith in the discharge of appellant's regulations governing his action. See Ft. Worth & R. G. Ry. Co. v. Jones, 85 S. W. Rep., 38, and authorities therein cited.

We conclude that the evidence supports the material allegations of appellee's petition; that all assignments of error should be overruled and the judgment affirmed.

*Affirmed.*

Writ of error refused.