## HASKELL v. WHITE OIL CORPORATION.*
### (No. 9953.)

(Court of Civil Appeals of Texas. Fort Worth. May 6, 1922. Rehearing Denied June 24, 1922.)

1. Appeal and error ⬉927(7)—Duty of court on appeal from directed verdict stated.

On an appeal from a judgment based on a verdict under a peremptory instruction, it is the duty of the court to give full effect to the testimony favorable to the appealing party to determine whether there was any question to submit to the jury and to reverse the judgment and remand the cause where it appears that the judgment was based on facts concerning which the evidence was conflicting in whole or in part.

2. Specific performance ⬉123 — Whether plaintiff furnished an abstract of title held for the jury.

In an action for the specific performance of a contract to purchase an oil lease, whether plaintiff tendered an abstract showing a good title within a reasonable time held, under the evidence, for the jury.

3. Indians ⬉27(7)—Seller of oil lease held estopped to assert that sellers of leases of Indian lands are not expected to furnish abstracts.

Where plaintiff, suing for specific performance of contract to purchase an oil lease, proceeded to furnish an abstract showing his title, he waived his right to set up the fact that parties selling leases and assignments of Indian lands are not expected to furnish abstracts of title.

4. Specific performance ⬉120—Evidence that owner had received an offer of a higher price while negotiations were pending held inadmissible.

In an action for the specific performance of a contract to purchase an oil lease, evidence by an agent of plaintiff that an offer higher than that made by defendant had been received pending the negotiations between plaintiff and defendant was inadmissible.

5. Specific performance ⬉123 — Peremptory instruction for plaintiff held not justified.

In an action for specific performance of a contract to purchase an oil lease, held, that a peremptory instruction for plaintiff was not justified.

6. Specific performance ⬉120—Evidence that defendant refused to buy oil lease because plaintiff furnished no abstract held admissible.

In an action for specific performance of a contract to purchase an oil lease, evidence by an agent for defendant that the reason defendant company refused to buy the lease was that no title was furnished by plaintiff was admissible.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by C. N. Haskell against the White Oil Corporation. From a directed verdict for defendant, plaintiff appeals. Reversed and remanded.

Lee, Lomax & Wren, of Fort Worth, for appellant.

Wray & Mayer and Capps, Cantey, Hanger & Short, all of Fort Worth, for appellee.

BUCK, J. C. N. Haskell sued the White Oil Corporation for specific performance of a contract claimed by plaintiff to have been made by defendant in writing to purchase for $51,000 an oil and gas lease on 30 acres

of land in Tillman county, Okl., alleging that he had fully complied with his obligations under the contract, and had tendered and then tendered to defendant the said property by due and legal conveyance. He also sued the First National Bank of Fort Worth on the alleged ground that it had in writing guaranteed the payment of said $51,000. The alleged contract consisted of telegrams and letters, which will hereinafter be set out.

The defendant White Oil Corporation answered by a general demurrer, and specially denied any contract in writing to purchase the lease, and specially pleaded that, if a contract had been made by its alleged agent, Freel, Freel had no authority to bind defendant by any contract for the purchase of the lease, and no authority to purchase leases for defendant, and specially no authority to purchase a lease until an abstract of title had been furnished and the title accepted by the attorneys of defendant. It further alleged that John Bahan was, during the times alleged in plaintiff's petition, the agent at Fort Worth of the defendant White Oil Corporation, hereinafter called company, and that Bahan had authority to purchase leases for defendant, provided the titles of the same were approved by the company's attorneys at Forth Worth; that Bahan did agree orally with the First National Bank of Fort Worth, hereinafter called bank, that the company would purchase the mineral lease alleged to be owned by the plaintiff on the property described in plaintiff's petition, subject to the approval of title to the same and the assignment thereof; that plaintiff restricted the time for the examination of the said title and assignment to one day, and that the company agreed that no extension of time should be granted; that a draft for $51,000 was presented to defendant, who directed its counsel to examine the title, whereupon it was ascertained that the plaintiff had offered no abstract of title which he proposed to assign for the consideration named, although the plaintiff had agreed so to do; that defendant's attorney, in the utmost good faith, declined to approve the title, and that no abstract, evidence, or certificate of title had been furnished by plaintiff prior to the filing of this suit. Defendant further pleaded that, if any contract was entered into, it was unilateral, and wanting in mutuality, and without consideration, and was therefore void. Further pleadings were submitted by defendant company and the defendant bank and plaintiff, and, if it shall become necessary in the course of this opinion to notice such further pleadings, it will be done.

The cause was tried in the Seventeenth district court of Tarrant county, and upon the close of the testimony the court instructed the jury to return a verdict for defendants, and the plaintiff has appealed from a judgment entered upon such a verdict.

Appellant has a number of assignments in his petition, but probably they can be limited to the following contentions:

(1) That the trial court erred in not giving a peremptory instruction for plaintiff.

(2) That the trial court erred in giving the peremptory instruction for defendants.

(3) That the trial court erred in declining to permit the plaintiff to show by his witness E. C. D'Yarmett the price plaintiff had been offered for the lease in controv~sy after the defendant had agreed to purchase said lease.

(4) That the trial court erred in permitting defendant, over plaintiff's objection, to introduce in evidence testimony of the witness A. E. Freel to the effect that the reason the defendant company refused to buy the lease in controversy was that no title to the same was furnished defendant.

F. L. Brown was a broker, with an office in the Westbrook Hotel, Fort Worth, and on January 16th he received from E. C. D'Yarmett the following telegram:

(1) "New York, N. Y. Jan. 16, 1920. F. L. Brown, Westbrook Hotel, Fort Worth, Texas: Can you sell departmental lease of forty acres southeast of northeast section thirty one half mile west of Fisher-Whaley for twelve hundred fifty per acre. Will pay five per cent. commission. Please send monthly gauges at once. Address Commodore. [Signed] E. C. D'Yarmett."

On January 17th and 18th Brown received telegrams 2 and 3, as follows:

(2) "New York, N. Y. Jan. 17, 1920. Fred L. Brown, Westbrook Hotel, Fort Worth, Texas. Price on forty acre lease thirty-one fifteen, hundred per acre instead twelve fifty as wired you last night. [Signed] E. C. D'Yarmett."

(3) "New York City, Jan. 18, 1920. Fred L. Brown, Westbrook Hotel, Fort Worth, Texas. In room nineteen forty-five Commodore, terms strictly all cash only want to sell thirty acres out of the forty buyer to select same will only consider sale made when bank guarantees payment upon delivery assignment to bank two other parties have wired they will put up money tomorrow. Be sure bank wires by Monday eleven a. m. E. C. D'Yarmett."

Other telegrams and letters are hereinafter set out as follows:

(4) "Fort Worth, Texas, January 18, 1920. E. C. D'Yarmett, Room 1945, Commodore Hotel, New York City: Price is seventeen hundred per acre. Your last message yesterday did not refer to any protection. Freel is wiring and bank will confirm. Am calling your room. [Signed] Brown."

(5) "Fort Worth, Texas, January 18th, Mr. D'Yarmett, Room 1945, Commodore Hotel, New York: Will take 30 acres put up by Brown and will have bank wire tomorrow if you think necessary. Answer. Regards. [Signed] White Oil Corporation, by A. E. Freel."

(6) "Fort Worth, Texas, January 19, E. C. D'Yarmett, 1945 Commodore Hotel, New York City: We will guarantee payment in behalf of White Oil Corporation of amount $51,000.00

covering gas and oil assignment of departmental lease of 30 acres Tillman county, Oklahoma, about one-half mile west of Fisher-Whaley well now drilling, subject to approval of title and assignment by White Oil Corporation. Answer. [Signed] First National Bank."

(7) "From New York City, January 19, 1920. First National Bank, Fort Worth, Texas. Sending assignment 30 acres with draft $51,000.00. Shall expect immediate approval or statement of requirements. Will allow one day for examination and approval. Title comes through T. B. Noble Company, is same taken by Phillips Company and others. Wire if these conditions satisfactory to White Corporation. [Signed] E. C. D'Yarmett."

(8) "Fort Worth, Texas, Jan. 20. E. C. D'Yarmett, 1945, Commodore Hotel, New York: Your wire 19th to First National Bank relative to extension of time has been handed to us for reply. As soon as draft, assignment and abstract here we will commence immediately to examine and will want just such time as is necessary to consider. Will not extend in any way. [Signed] White Oil Corporation, John Bahan."

(9) "Fort' Worth, Texas, January 20, 1920. E. C. D'Yarmett, Room 1945, Commodore Hotel, New York, N. Y.—Dear Sir: I acknowledge your wire of the 19th relative to requirements of examination in the matter of the 30 acres to the White Oil Corporation. I have just taken the matter up with Mr. John Bahan, their division treasurer, and he advises that he will telegraph you his instructions. Yours truly, W. P. Andrews, Vice Pres."

(10) "New York, January 21, 1920. White Oil Corporation, Fort Worth, Texas: Assignment thirty acres Tillman county with draft $51,000.00 deposited here today. Kindly attend to this upon its arrival at First National Bank, Fort Worth, Texas. [Signed] E. C. D'Yarmett."

(11) Letter. "To First National Bank, Fort Worth, Texas, January 21, 1920—Gentlemen: Pursuant to your telegram to me which reads as follows: 'Fort Worth, Texas, January 19. E. C. D'Yarmett, Room 1945, Commodore Hotel, N. Y. C. We will guarantee payment in behalf of White Oil Corporation, amount fifty-one thousand dollars covering oil and gas assignment on departmental lease on thirty acres Tillman county, Oklahoma, about one-half mile west of Fisher-Whaley well now drilling subject to our approval of title and assignment by White Oil Corporation. Answer. First National Bank'—assignment has been executed in proper form and is attached hereto with draft for $51,000.00 in favor of C. N. Haskell. Prompt payment thereof is expected as provided in your foregoing telegram. Yours very truly, E. C. D'Yarmett."

(12) Letter. "From C. H. Webb, Collection Clerk, to First National Bank of Fort Worth, Texas, January 21, 1920—Gentlemen: We are inclosing herewith our collection No. 95998, attached to which is a sight draft for $51,000.00 drawn on the White Oil Corporation, your city, attached to which you will find an assignment of oil and gas lease duly executed, also a letter to yourselves. The documents attached to this draft are to be surrendered upon payment, as we have added the exchange, namely $51.00 on this draft. In the event that the

drawees refuse to pay same, kindly wire us and hold draft for further instructions. Thanking you to acknowledge receipt, we are, yours very truly, C. H. Webb, Collection Clerk."

(13) Letter. "Coal & Iron National Bank of New York. Report by this No. 95998. Date: Jan. 21, 1920. We inclose for collection and credit when paid to First National Bank, Fort Worth, Texas, documents attached: Assignment of oil and gas. Lease Letter. Indorser: Middle States Oil Corporation, $51,000.00. Number letter and date. Maker or drawee: White Oil Corporation. Instructions: Deliver documents on payment only. Payable at Fort Worth, Tex. Items dated 1—21—20. Do not protest unpaid items $10 or under or those marked 'X' unless otherwise instructed, protest and return at once. Notice is hereby given that items on this form are to be credited or remitted to us only when actually and finally paid. Respectfully, Addison H. Day, Cashier. Please give special advice of payment. Memorandum attached: Returned First National Bank, Fort Worth, Texas. White Oil Corporation asked that we return as title never been furnished."

(14) "January 23, 1920, 8:30 a. m. Wichita Falls, Texas. Mr. D'Yarmett, Hotel Commodore, New York: Not having heard from you, we do not care for acreage in section 31. The White Oil Corporation."

(15) "January 23, 1920. White Oil Corporation, Fort Worth, and Wichita Falls, Texas: Assignment thirty acres left here Wednesday as per your instructions to First National Bank, Fort Worth, Texas. We expect you to take up draft on presentation. [Signed] E. C. D'Yarmett."

"(16) "January 27, 1920. Mr. C. N. Haskell, care Middle States Petroleum Company, 347 Madison Street, New York City, N. Y.: Draft for $51,000.00 and assignment received here by First National Bank. Did you not send an abstract of title on the same for us to pass on? [Signed] White Oil Corporation, by John Bahan."

(17) "New York City, January 27, 1920. John Bahan, care White Oil Corporation, Fort Worth, Texas: Abstract was not requested. However, have wired our Wichita office to send you one at once. [Signed] C. N. Haskell."

(18) Dated January 27, 1920, to Coal & Iron National Bank, New York, from the First National Bank of Fort Worth, Texas. "Referring, your 95998, White Oil, advise abstract not yet received for examination. Inquire of C. N. Haskell and answer. First National Bank."

(19) Telegram from Coal & Iron National Bank to First National Bank, dated January 28, 1920. "Answering your wire, abstract being forwarded by Wichita Falls office to White Oil Company. Hold draft. We confirm. Coal & Iron National Bank."

(20) Letter dated January 28, 1920, to First National Bank, Fort Worth, Texas, signed C. H. Webb, Collection Clerk. "Gentlemen: We hereby confirm our wire to you of even date as follows: 'Answer your wire. Abstract being forwarded by Wichita office to White Oil Company. Hold draft. We confirm.' The above refers to our collection No. 95998, drawn on White Oil Corporation for $51,051.00 sent you in our favor of January 21. Mr. Haskell has

informed us that Wichita Falls office has been instructed by him to forward the abstract in question, and when the same has been received by the drawee, we would thank you to present the draft for payment again, and if not paid, kindly hold draft and await our further instructions. [Signed] C. H. Webb, Collection Clerk."

(21) "February 2, 1920. Confirmation of telegram from First National Bank, Fort Worth, Texas, 2—2—20. Collect. Coal & Iron National Bank, New York, N. Y.: 'No title yet furnished your 95998. White Oil Corporation now asks us to return. Advise. First National Bank.'"

(22) "New York, N. Y. February 3, 1920. First National Bank, Fort Worth, Texas: Answer your wire second. Present White Oil draft again. If refused, protest and return. We confirm. Coal & Iron National Bank."

(23) Letter from Coal & Iron National Bank to First National Bank, Fort Worth, Texas, dated February 3, 1920. "Gentlemen: We inclose herewith confirmation of our wire to you of even date. Same refers to our collection No. 95998 sent you in our favor of the 21st ult., for $51,051.00, sight draft on the White Oil Corporation. Thanking you to give this matter your usual prompt attention, we are, Yours very truly. C. H. Webb, Collection Clerk."

(24) Telegram from J. E. Strong to White Oil Corporation, Fort Worth, Texas, dated February 5, 1920. "Wichita Falls, Texas, February 5, 1920, 5 p. m. White Oil Corporation, Fort Worth, Texas: At request D'Yarmett C. N. Haskell, agent, am preparing assignment to you on thirty acres, section 31, Tillman county, Same will reach you next few days."

(25) Letter. "Coal & Iron National Bank, New York, N. Y.—Gentlemen: We are in receipt of your confirmation of February 3, requesting us to protest and return item on White Oil Corporation, wish to advise that we did not receive your original telegram, but we are protesting and returning draft upon receipt of your confirmation. Yours very truly, Assistant Manager."

(26) Letter. "February 7, 1920. First National Bank, Collection Department, Fort Worth, Texas—Gentlemen: We are inclosing herewith copy of telegram which has reference to $51,000.00 draft which you were holding drawn on White Oil Corporation, John B. Bahan, Division Treasurer. This is the latest that we have regarding the abstract which they were going to furnish us from Wichita Falls. Yours very truly, White Oil Corporation, by John B. Bahan, Neilon, General Superintendent."

(27) Letter. February 11, 1920, from Coal & Iron National Bank to First National Bank, Fort Worth, Texas. "Gentlemen: We inclose herewith for collection and remittance our No. 95998, sight draft, for $51,051.00 drawn on the White Oil Corporation of your city, attached to which you will find our assignments of oil and gas leases, same to be delivered to the drawees upon payment only. The drawer insists upon the draft being paid, as he holds guaranty by telegraph made by you. Kindly wire us immediately upon receipt of the papers whether this draft is paid or not. Thanking you to acknowledge receipt by mail, we are, Yours very truly, C. H. Webb, Collection Clerk."

(28) February 17, 1920, from First National Bank of Fort Worth, Texas, to Coal & Iron National Bank, Collection Department, New York City. "Reporting on 96586 presented White Oil Company. Claim title has never been furnished. Have D'Yarmett refer to our conditional wire of January 19th. First National Bank."

(29) "New York, February 17, 1920. First National Bank, Fort Worth, Texas: Answering your wire seventeenth. Hold draft White Oil Company. D'Yarmett notified. [Signed] Coal & Iron National Bank."

(30) Letter. "New York, February 17, 1920. First National Bank, Fort Worth, Texas—Gentlemen: We are inclosing herewith confirmation of our telegram to you of even date. This refers to our collection No. 96586 draft drawn on the White Oil Company, your city. We would thank you to continue to hold this draft until further notice. Yours very truly, C. H. Webb, Collection Clerk."

(31) "Fort Worth, Texas, January 27, 1920. Phillips Petroleum Company, Bartlesville, Oklahoma. We have under consideration the purchase of thirty acres about one-half mile west of Fisher-Whaley well, Tillman county. We have been advised that you purchased a part of the tract under assignment from C. N. Haskell. Lease to Haskell conveyed to him a departmental lease. Please advise us if you are familiar with this departmental lease, stating if it was regular, advising name of your attorney who passed on this title. This is section No. 31. Thanking you for any consideration. [Signed] White Oil Corporation."

(32) "Bartlesville, Oklahoma. White Oil Company, Fort Worth, Texas: Answering your message, we took assignment from Noble & Co., southwest northeast section 31, township 4, range 14, which assignment, has been approved by Secretary of the Interior. This is the only lease we have immediately west Fisher-Whaley well. [Signed] Phillips Petroleum Company."

John Bahan testified:

That he authorized Mr. Freel to say that, if the proper abstract of title was made, showing good title to the lease in plaintiff, the company would accept the proposition of $1.700 per acre for the property, and that up to February 25th, the date the suit was filed, the defendant company, he believed, did not determine that it would not take the lease, even though title was shown. That up to the time when plaintiff's attorney came to see him in Fort Worth about the deal, and to ask his reasons for the company's not taking the property, the company was at all times ready to take the property if title had been shown. That he told Mr. Wren, attorney for plaintiff, that, if a good title was shown at that time, and an abstract was tendered, the company was ready to take the property.

He further testified:

"I was laying quiet and waiting because we wanted to get something to put up to our attorneys. so that they could pass on it, and so we could get the property; we wanted the property at that time, and we did not cease to want it until it got so

that they put up all they were going to, and it was not satisfactory; we had nothing to put up to our attorneys, and then they entered suit. I cannot say that we ever ceased to want the property."

A. E. Freel testified:

That he was in charge of the land department of the defendant company during the negotiations of this deal, and that F. L. Brown approached him on the streets of Fort Worth and told him about the offer of D'Yarmett. That the witness knew D'Yarmett and knew the land in controversy, but did not know whether D'Yarmett owned it or not. That, upon the receipt of the telegram from D'Yarmett to Brown of January 18, 1920, marked (3) hereinabove, the witness went with Brown to the First National Bank and arranged with the bank to guarantee the payment of the check, upon the company's acceptance of the title, whereupon the bank sent the telegram marked (6) hereinabove. That on January 19th he went to Wichita Falls, and was absent from Fort Worth for several days. That while absent from Fort Worth he kept daily in touch with the office there by wire. That on January 23d he sent a telegram, marked (14), to D'Yarmett in New York, stating: "Not having heard from you, we do not care for acreage in section 31." That he had authority to buy oil leases for the company, subject to approval of title by the company's attorneys; that, with this limitation, his power to purchase leases was practically unlimited.

E. C. D'Yarmett testified:

That he was in Fort Worth on February 20th, and met Mr. Freel, and asked him why there had been no statement of requirements, and he answered that there was no abstract to submit to the attorneys. That he said: "Mr. Freel, you have dealt in Indian leases long enough to know that abstracts are not usual, except certified copies of approval of the Secretary of the Interior. Now, are there any other objections to any of the papers that are in the bank? Can you tell me, if I furnish the certified copies, that is all you want? That Freel answered: "You will have to take that up with my attorneys."

D'Yarmett further testified:

That, at the time of this conversation with Freel, the certificate of approval of the assignment from T. B. Noble & Co. to plaintiff of the lease had not been secured. That he told Mr. Freel that he would furnish such certificate as soon as he could secure it. That he knew that the Secretary of the Interior would approve the assignment, because everything had been complied with. That, while it was a matter of absolute discretion with the Secretary of the Interior as to whether he approved an assignment or rental contract of Indian lands (the fee-simple title to the property in question being in one Nellie Jones, a Cherokee Indian), yet, when everything had been complied with, the Secretary of the Interior always approved the rental contract or assignment. That the Secretary of the Interior certified his approval of the lease, or assignment thereof, from Noble & Co. to Haskell on February 4th. That

one assignment by plaintiff to the defendant company was executed on January 20, 1920. Neither this assignment nor the two others contain any warranty. That another was executed February 11th, for a recited consideration of $52,500. A third was also executed on February 11th for the same consideration. That witness had Mr. J. E. Strong, secretary of the T. B. Noble Company, who was familiar with transactions of this kind, and with the property in controversy, to prepare the last assignment. That he did not know why they put the consideration in at $52,500. That his instructions were to put the consideration at $1,700 an acre.

It also appears that a second draft was drawn on the defendant company for $52,500, but D'Yarmett testified that he never drew, or authorized to be drawn, any draft in excess of $51,000. He further testified that he did not know before the Secretary of the Interior certified his approval of the assignment from Noble & Co. to plaintiff that the defendant company had declined to accept the lease, though he testified that he did receive A. E. Freel's wire on January 22 to the effect that the defendant company did not care for any acreage in section 31.

A. E. Freel testified:

That while he was in Wichita Falls he requested one of the company's men to ask F. L. Brown if he had had any reply from D'Yarmett, and that Brown said that he had not. Then he sent the telegram dated January 22d. That the telegram was sent either on the 22d, or perhaps after midnight.

Judge Charles F. Spencer testified:

That he was in New York from January 18 to 21, 1920, with Mr. D'Yarmett, and at the latter's request he went by Washington, reaching there on the 24th, 25th, or 26th. That he went to see the Interior Department and the Indian Department. That he was connected with the T. B. Noble Company, and that when he reached the Interior Department he found that the assignment of the lease from Noble & Co. to C. N. Haskell had been approved, but not certified. That he had a conference with Mr. Sells, commissioner of the Indian affairs, and he promised to have the Secretary of the Interior's approval of the assignment from Noble & Company to Haskell certified and sent to Anadarko, Okl., as soon as possible. That he tried to secure the certified assignment and bring it to Wichita Falls with him, but that, under the rules of the department, such papers were sent to Anadarko, it being the local Indian agency in Oklahoma. That, if said assignment of the lease, duly certified, did not reach Wichita Falls until approximately three weeks after February 4th, in the witness's opinion this was a usual delay in matters of this kind. That one is very fortunate if he can get back from Washington such papers in less than from 20 to 30 days. That he had had a good deal of experience in Indian leases, and in examining the titles thereto, and that he knew that certified copies of leases and assignments are furnished by the Washington office. That the department does not permit the Ana-

darko office to furnish these certificates. That he never knew of the Secretary of the Interior arbitrarily exercising his discretion to decline a lease, and never knew of either branch of the department at Washington refusing to ratify either the sale of the lease by the local agency at Anadarko or the assignment thereof. That it is the policy of the Department to encourage leases and assignments thereof for the purpose of having the Indian lands developed.

[1] This being an appeal from a judgment based on a verdict of the jury under a peremptory instruction, it is our duty, in determining whether or not there was any question of fact, to submit to the jury, to give full effect to the testimony favorable to the appellant's contention, and, if, after giving such effect, it appears to us that the judgment rendered by the trial court is based, even in part, upon questions of fact concerning which there was a conflict of testimony, it is our duty to reverse the judgment and remand the cause.

[2] The plaintiff in the court below pleaded, and here contends that, even though it may be said that time was the essence of this contract under the first offer, and even though it may be legally contended that the defendant company had the right to demand an abstract of title showing good title in plaintiff of the assignment in controversy, and, even though such abstract of title was not delivered to the defendant company until more than a month after the negotiations began, and after the acceptance of the plaintiff's proposition by defendant, yet the evidence discloses, or at least makes it a question of fact for the jury, that, when defendant demanded an abstract of title, plaintiff, waiving his requirement of a prompt acceptance of his offer by defendant, proceeded to secure some of the papers, including this certificate of approval by the Secretary of the Interior, necessary to show an abstract of title evidencing a good title; that it was a question of fact whether such abstract of title was furnished within a reasonable time. In the face of the testimony by defendant's witnesses hereinabove noted, to the effect that the time used by plaintiff to secure said abstract of title was a reasonable time, and in view of the testimony of Mr. Bahan that, even at the time he was approached by plaintiff's attorney, and asked why the defendant was not taking the property, the defendant company was then willing to accept the property if a good title was shown by the abstract, we believe that it was a question of fact to be decided by a jury as to whether or not the plaintiff tendered an abstract of title showing a good title in plaintiff to the property in controversy within a reasonable time.

Counsel for both sides have exercised commendable diligence in furnishing the court with briefs and written arguments containing the citation of many authorities, and we have carefully read the briefs and arguments, but it seems to us that no sufficient legal reason has been given by the appellee for the trial court's ignoring the question of fact raised by the testimony and heretofore mentioned, and giving a peremptory instruction for the defendants. For this reason the judgment of the trial court will be reversed, and the cause remanded.

[3] There is a further contention by appellant that parties selling leases and assignments of Indian lands are not expected to furnish abstracts of title. There is some testimony on behalf of plaintiff below to this effect, but in the instant case we believe that the appellant waived any question of this kind by proceeding to furnish the abstract. Upon another trial, if the evidence presents the question of waiver, the question can be submitted to the jury, with proper instructions.

[4] We are inclined to hold that the trial court did not err in excluding the testimony by D'Yarmett that a $75,000 offer had been received by plaintiff pending the negotiations between him and the appellee company for the lease on the 30 acres in controversy. This testimony is urged to be material on the good faith of the defendant company in refusing to consummate the trade, after certain wells in the vicinity of this acreage had proven to be dry holes. In the first place, this is an action for specific performance, and not for damages by reason of a breach of a contract on defendant's part; hence it would be immaterial to show that pending the negotiations even the reasonable market value of the lease was in excess of the agreed price between plaintiff and defendant company. Moreover, we do not understand that the testimony offered was admissible upon the question of market value. A mere unaccepted offer cannot ordinarily be shown as evidence of value. Ry. Co. v. Randle, 18 Tex. Civ. App. 348, 44 S. W. 603; Brennan v. Cotton Oil Co. (Tex. Civ. App.) 44 S. W. 588.

[5] We further hold that, under the evidence before the trial court, a peremptory instruction for plaintiff would not have been justified. If the trial court had submitted the question of whether the abstract of title was furnished defendant company by plaintiff within a reasonable time, we would not have disturbed a judgment for defendants upon the facts.

[6] We find no reversible error in the action of the trial court in admitting the testimony of A. E. Freel to the effect that the reason the defendant company refused to buy the lease under consideration was that no title to the same was furnished by plaintiff.

For the reasons given, the judgment is reversed, and the cause remanded.