GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v.
EMIL H. BAUMGARTEN ET AL.

Decided January 21, 1903.

**1.—Venue—Railroads—Personal Privilege—Waiver.**

The legislative act fixing the venue of suits against railroad corporations (Gen. Laws 1901, p. 31) is one of personal privilege, and may be waived by the defendants voluntarily appearing.

**2.—Same—Jurisdiction.**

Where the defendant railway company, before the Act of 1901 took effect, filed a general demurrer and general denial in an action brought in a county other than that in which the plaintiff resided or the injury occurred, it thereby waived all questions of venue, and conferred jurisdiction upon the court which was not affected by the passage of the act.

**3.—Personal Injury—Expert Evidence—Hypothetical Question.**

See hypothetical question to a physician as to the effect of certain personal injuries, held not subject to objection as not being sufficiently specific and as assuming facts not supported by the evidence.

**4.—Same.**

A physician who had examined plaintiff was asked for his opinion as to what produced the condition in which he found plaintiff, and answered that he believed the preponderance of the testimony required the conclusion that the condition was the result of physical injury, and that by the preponderance of testimony he meant a consideration of all the facts in connection with the case that had come to his knowledge, outside of anything said to him by plaintiff or any other person. Held, that the answer was admissible.

**5.—Evidence—Admissibility.**

Appellant could not urge objection to the admission of certain evidence where the same testimony from other witnesses went unchallenged to the jury.

**6.—Same—Deposition—Question Not Answered—Judicial Discretion.**

The refusal of the trial judge to suppress the deposition of a witness for failure to fully answer the question as to whether any one had talked to her concerning her testimony, was not an abuse of discretion where the deposition showed no desire to conceal anything, but that the failure to fully answer was unintentional, and her testimony was corroborated by other witnesses.

**7.—Same—Predicate—Personal Injury.**

Where a witness testified that he had been the physician for the injured party and treated her for her injuries, this was a sufficient predicate for the further statement, on cross-examination, that her back and spine had been permanently impaired by such injuries, which had also produced internal female complications and made her a permanent invalid.

**8.—Parties—Personal Injury to Wife—Community Property—Waiver of Misjoinder.**

While the wife is not a necessary or proper party to an action by the husband for damages resulting from personal injuries to her, such damages being community property, yet where no objection was made at the trial because of her joinder as plaintiff, and no prejudice resulted therefrom to the defendant, the question of such misjoinder can not be raised on appeal.

**9.—Personal Injury to Wife—Measure of Damages.**

In an action brought jointly by the husband and wife for personal injuries to the wife the measure of damages is the mental and physical pain suffered by her, and the amount of the impairment of her capacity to labor in the future.

Appeal from the District Court of Bexar. Tried below before Hon. S. J. Brooks.

*Newton & Ward* and *Baker, Botts, Baker & Lovett,* for appellant.

*Robson & Duncan, Perry J. Lewis,* and *H. C. Carter,* for appellees.

FLY, ASSOCIATE JUSTICE.—This is a suit instituted by Emil H. Baumgarten and Susie J. Baumgarten, to recover damages alleged to have been received by the latter through the negligence of appellant, in having a decayed culvert, through which the horse of Mrs. Baumgarten fell, and she was thereby precipitated from her buggy and permanently injured.

The statement of facts justify the conclusion that Mrs. Baumgarten, while crossing a culvert erected and maintained by appellant on one of the streets of the town of Schulenburg, in her buggy, was thrown from the same and seriously and permanently injured. The accident to Mrs. Baumgarten occurred by reason of the planks having been negligently allowed to become rotten on appellant's culvert, and the horse's feet broke through and by his struggles Mrs. Baumgarten was thrown violently to the ground, and appellees sustained damages in the sum found by the jury. The negligence of appellant in permitting the culvert to remain in its decayed condition was the cause of the injury.

This suit was instituted on July 8, 1901,—one day before the act of the Legislature entitled "An act to fix the venue of suits against railroad corporations," etc., went into effect. Gen. Laws 1901, p. 31. Appellant demurred to the petition and filed a plea to the jurisdiction on the ground that the injury of which complaint was made occurred on July 25, 1900, in Fayette County, and that the plaintiffs resided in Fayette County, and therefore said suit could not be prosecuted in Bexar County, but could only be prosecuted in Fayette County, where the plaintiffs reside and where the injury occurred. It is the contention of appellant that every pending suit was affected by the passage of the act, and that wherever a suit was pending in a county where the plaintiff did not reside, or where the injury was inflicted, the court in which it was pending was at once deprived of jurisdiction to try it. Appellant on October 7, 1901, by filing a general demurrer and general denial waived all question of venue, and gave the District Court of Bexar County jurisdiction, whatever may have been the effect of the statute in question. The demurrer and plea to the jurisdiction were filed May 19, 1902. That statute like any other of its class is one of personal privilege, and can be and was waived by the voluntary appearance of appellant. We see no question of public policy that was to be subserved by its passage, or that will be interfered with by a waiver of it on the part of a railroad corporation.

On the trial of the cause Dr. Owens, who had treated Mrs. Baumgarten while suffering from her injuries, after he had fully described the nature of her injuries, was asked: "Assuming that the testimony in the case showed that Mrs. Baumgarten was a strong, healthy woman, and that she met with an accident, being thrown from a buggy, and received several very severe bruises, one on the small of the back, and a number

of severe bruises were indicated on her person, and since that time she has not been well, what, in your opinion, would be the cause of her present condition?" He answered: "I would be bound to consider it came from the accident, in the absence of anything else." The question and answer were objected to on the ground that the question was not sufficiently specific to form the basis for an opinion, and because it sought to elicit an opinion upon a hypothetical case not sustained by the evidence. The trial judge states that the witness was placed on the stand before the facts of the case had been developed, because he was compelled to leave, with the understanding that the evidence would be withdrawn from the jury unless the hypothetical case was sustained by the testimony. The testimony did fully support the hypothetical case, and the question was sufficiently specific to form a basis for the opinion of the physician. The doctor, previous to the answer to the hypothetical question which was put to him, had testified that when he first examined Mrs. Baumgarten she had a swelling in the lumbar region of the back, and there was other testimony to the effect that she was bruised on her breast, hip, knee and wrist, and that she had received the injuries in the accident upon which this suit is based. Previous to the time of the accident she had been a strong, healthy woman, and since had not been well.

On the cross-examination, by appellant, of Dr. Harrison, a witness for appellees, the opinion was elicited that the condition of Mrs. Baumgarten was the result of a physical injury, and on the redirect examination the witness was asked: "From your examination of Mrs. Baumgarten, what, in your opinion, produced the condition she was in?" He answered: "I have already stated that I believe the preponderance of testimony takes me to the conclusion that the condition she was in was the result of physical injury, traumatism, violence." The appellees then asked what the witness meant by preponderance of testimony, and he answered: "Embodies a consideration of all the facts in connection with the case that have come within my knowledge,—physical conformation, the condition of the bruises as I found them,—and the circumstances which have resulted in those conditions appealed to my mind, and I selected that which my judgment told me is the most probable." Appellant then moved that the testimony be excluded on the ground that it was hearsay, irrelevant, and not the subject of expert testimony. The court then said to the witness: "Do you mean by preponderance of testimony something you have heard," and he answered, "No, sir; I mean that which comes within my observation." The court then said, "Nothing she or anyone else told you?" and the witness replied, "No, sir; it is what I found. I find a woman of fine proportion, and I take into account the facts that have come to my own personal knowledge." The court then said: "You don't base it on anything she or anyone else told you?" and the witness answered in the negative. The evidence was admissible. Railway v. Burnett, 80 Texas, 536; Railway v. Williams (Texas Civ. App.), 62 S. W. Rep., 808.

There is no merit in the sixth assignment of error. The question was

not leading, and the answer was material as to the issue of the condition of Mrs. Baumgarten's health before the accident. The issue was presented by the petition.

The seventh assignment of error complains of a certain question propounded to Mrs. Baumgarten as to what induced her to come to San Antonio for medical treatment, and her answer thereto. The bill of exceptions presents no objection to anything except the question, and while it, as well as the answer, may have been irrelevant and immaterial, appellant could have suffered no injury whatever from them; and the same evidence was given by Emil Baumgarten without objection on the part of appellant. The question and answer complained of in the eighth assignment of error were not open to the objections urged against them, and, had they been objectionable, appellant can not urge objections because the same testimony from other witnesses went unchallenged to the jury. The testimony was abundant to the effect that Mrs. Baumgarten was a strong, healthy woman prior to the accident, and had been delicate and almost an invalid since. What is said in regard to the eighth assignment of error disposes of the matters raised in the ninth assignment.

Complaint is made that the deposition of Mrs. Wolters should have been suppressed, because she failed to answer a cross-interrogatory propounded to her by appellant, as to whether anyone had talked to her about her testimony, who it was, how he came to talk to her, and when the conversation occurred. To the question she answered: "Mr. H. C. Carter, attorney, spoke to me about the case prior to May, 1902, and told me that if I was not able to testify in this case my deposition would be taken." If the answer of the witness should be held to be a refusal to answer the cross-interrogatory, still it does not appear, nor is even claimed by appellant, that the failure to suppress the deposition had operated prejudicially to appellant. Mrs. Wolters testified that she was with Mrs. Baumgarten when she was hurt, and that the injury occurred by the feet of her horse going through appellant's culvert, which was decayed, thereby throwing her out of the buggy. She also testified as to Mrs. Baumgarten's state of health before and since the accident. As to circumstances surrounding the accident, there was no attempt to contradict the statement made by Mrs. Baumgarten, although she stated that an employe of appellant saw the accident; but, on the other hand, the testimony of Tanner, appellant's agent, corroborates her as to the condition of the culvert. As to the condition of Mrs. Baumgarten before and after the accident, the witnesses were numerous who swore as did Mrs. Wolters. It appears from the answer itself that there was no desire to conceal anything, but that it was merely an unintentional failure to fully answer. In such cases, as said in the case of Railway v. Shirley, 54 Texas, 125, "much must be left to the discretion of the court," and we see no abuse of it in this instance.

The answer of Dr. Matthews to certain cross-interrogatories propounded to him by appellant was, on its motion, suppressed, and it objected to the introduction by appellees of an answer to another cross-

interrogatory, on the ground that the question was predicated upon the answers that had been suppressed, and were therefore unintelligible. In the testimony of Dr. Matthews, elicited by the direct examination, which went to the jury, it was stated he had been the physician for Mrs. Baumgarten and that he treated her for her injuries. This formed a sufficient predicate for the statement that Mrs. Baumgarten's back and spine had, by such injuries, been permanently impaired, and that the injuries had produced internal female complications, and had made a permanent invalid of her. This suit was instituted by the husband and wife for damages arising from injuries inflicted on the wife. Damages arising from personal injuries inflicted either on the husband or wife are community property. Sayles' Civ. Stats., art. 2968; Ezell v. Dodson, 60 Texas, 331; Railway v. Burnet, 61 Texas, 638. It is the settled law of this State that the wife can not sue alone, or when joined by her husband pro forma, for the recovery of community property, and the wife is not a necessary, or even a proper party, in a suit brought by the husband for community property. Edrington v. Newland, 57 Texas, 634; Railway v. Burnett, 61 Texas, 638; Middlebrook v. Zapp, 73 Texas, 29.

This is not a suit brought by the wife, in which the husband is joined pro forma, but it is a suit prosecuted jointly by husband and wife and, had exceptions been presented in the trial court to the wife being joined in the suit, the exceptions should, and doubtless would, have been sustained by the trial judge. But no such exceptions were presented, and the question is raised for the first time in the appellate court. In a similar case to this where the husband and wife had joined to recover damages sustained by the wife, it was said by the Supreme Court: "In actions to recover money which will be community property when realized, the wife is not ordinarily a necessary or proper party; but in this case no objection was taken to her joinder with her husband as a plaintiff, and it can not be raised here for the first time. No injury results to the appellant from the rendition of a judgment in favor of the husband and wife. Railway v. Helm, 64 Texas, 147. It was further held in that case that if no injury is shown to have resulted, a judgment will not be reversed even where an exception to the joinder of the wife with the husband has been overruled. See, also, Lee v. Turner, 71 Texas, 265; Middlebrook v. Zapp, 73 Texas, 29; Johnson v. Erado (Texas Civ. App.), 50 S. W. Rep., 139. The damages inflicted on Mrs. Baumgarten were damages to the community estate of herself and husband, as well as to her, and the court did not err in instructing the jury that the measure of damages was the mental and physical pain suffered by her and the amount of the impairment of her capacity to labor in the future. It would not matter to whom the capacity to labor might have been an advantage, whether to the husband or wife, one or both, the damages resulting from such impairment would be community property and the husband could recover them. At common law, when a wife received personal injuries through the negligence or fault of another, she had the

right of action, and could sue for the damages inflicted, if joined by her husband. The husband alone could recover for the loss of the wife's services, and for the amount paid to restore her to health. The common law rule does not prevail in Texas, but the husband, as an equal owner and sole manager of the community property, is alone authorized to sue for damages to the wife, and he can recover all the damages growing out of, or flowing from, the injuries inflicted upon her. As said in the case decided by the Supreme Court of the State of Washington, which is cited and relied upon by appellant: "The first element of these to be considered is that directly connected with the person of the wife,—the injury, and its subsequent consequences, whether permanent or temporary, and her pain, suffering, wounded feelings, etc.; next the cost of her nursing, medical attendance, and medicines, which, although they could at common law be recovered by the husband alone, are with us presumptively expenses incurred and paid by the community; and lastly, the loss of the wife's services in the household." Hawkins v. Railway, 16 Law Rep. Ann., 808. The same measure of damages applies in this case that would have been applicable had the wife been a feme sole and brought the action. The pleading and evidence were sufficient to warrant the charge as to the measure of damages. Railway v. Burnett, 80 Texas, 538; Railway v. Lacy, 86 Texas, 244.

The suit was a joint one by the husband and wife, and there is nothing in the charge to lead the jury to give a larger verdict than would have been given had the husband sued alone, and the verdict does not indicate that the jury were in any manner misled by the joinder of the parties into giving a larger sum than would have been awarded had the husband sued alone. The charge did not authorize or permit the recovery of double damages. The verdict is not excessive.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.