## WICHITA FALLS TRACTION CO. v. McABEE et al.   (No. 12176.)

Court of Civil Appeals of Texas.   Fort Worth.
July 8, 1929.

Rehearing Denied Sept. 28, 1929.

W. H. Lipscomb, of Fort Worth, and Wm. N. Bonner and Virgil Childress, both of Wichita Falls, for appellant.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellees.

BUCK, J. Plaintiff Mrs. J. H. McAbee, joined pro forma by her husband, J. H. McAbee, filed suit in the district court of Wichita county against the Wichita Falls Traction Company for damages, alleged to have occurred in May, 1928. She alleged that on the night of May 10, 1928, on account of the stormy weather, she left her home and drove in a Ford automobile, with her nephew, some 14 years old, to the home of her sister-in-law, Mrs. Mike Benson, at 1804 Ninth street; that she stayed there until about 9:30 or 10 o'clock that night; that at said time and place, as alleged in her original petition, she "backed her automobile out of a driveway at No. 1804 on said street with the intention of driving in an easterly direction along Ninth street; that she backed said car out into said Ninth street and upon and across the said street car track when without any fault or negligence on her part the motor of said automobile stopped, leaving said car standing diagonally across said track; that at about the time the said automobile stopped as aforesaid the plaintiff observed one of the defendant's street cars approaching from the rear at a very rapid rate of speed; at about the same time the motorman of said street car having already observed her automobile standing upon said track began ringing the bell of said street car as a warning to her to get her said automobile off the track; that the plaintiff immediately upon finding said motor had stopped undertook to start the same and used every means at her command in an effort to start said car, but owing to the fact that it was a cold wet night the motor of said automobile was sluggish and the plaintiff was unable to start the same immediately; that the defendant's employee in charge of said street car failed and neglected to check the speed of said car but continued at a rapid and reckless rate of speed, striking the plaintiff's automobile in such a manner and with such great force as to produce the injuries hereinafter fully set out."

Plaintiff alleged that she was injured in her head, neck, shoulders, back, and arms, and that she sustained an injury to her chest by being thrown against the steering wheel of the automobile, and that she was greatly frightened, and that her nervous system was shocked. In her original petition she prayed for damages in the sum of $3,000. In her amended petition, filed September 24, 1928, some four months later, she amplified the allegations of defendant's negligence, of her injuries, and alleged that by reason of said injuries she was permanently injured, and prayed for $15,000 damages.

The cause came on for trial, and the case was submitted to a jury on special issues. The trial court, after defining "negligence," "contributory negligence," and "proximate cause," submitted the case on the following special issues:

"1. Was the operation of the defendant's street car at the rate of speed it was going on the occasion of which plaintiff was struck by said street car, negligence as that term is defined to you herein? Answer: Yes.

"2. If you answer the preceding issue 'no' you need not answer this issue, but if you answer it 'yes' then was said operation of said street car at said rate of speed a proximate cause of the injuries, if any, to plaintiff, as that term has been defined to you? Answer: Yes.

"3. On the occasion at which defendant's street car collided with the automobile of plaintiff was the operator of defendant's street car keeping such a lookout as would have been kept by a person of ordinary prudence to avoid injuring persons and property situated and under the circumstances that the plaintiff was at this time? Answer: Yes.

"4. If you have answered the preceding issue 'yes' you need not answer this issue, but if you have answered it 'no,' then was such failure to keep such lookout, if any such failure you have found, a proximate cause of the injury to plaintiff, if any? Answer: ————.

"5. Did the operator of the street car in question just prior to the collision of the street car with the automobile have said street car under control? Answer: No.

"5-a. If you answer the preceding issue 'yes', then you need not answer this issue, but if you answer it 'no' then was such failure to have such street car under his control, if any such failure you have found, negligence on the part of the defendant? Answer: Yes.

"6. If you have answered the preceding issue 'no' you need not answer this issue, but if you have answered it 'yes' then was such negligence, if any you have found, a proximate cause of the injury to the plaintiff, if any? Answer: Yes.

"7. Did the defendant's motorman on the street car which collided with the plaintiff's automobile at the time in question discover the dangerous position of the occupants of the automobile and realize their peril and realize that they would not probably be able to extricate themselves therefrom so that in the exercise of ordinary care by the use of all means at his command consistent with the safety of the street car and its passengers and himself he could have avoided the collision? Answer: Yes.

"8. If you answer the preceding issue 'no', then you need not answer this issue, but if you answer the same 'yes' then did the mo-

torman in question after he was apprized of the fact as shown by your affirmative 'yes' answer to the preceding issue, if you did so find, exercise ordinary care to use all of the means at his command consistent with the safety of the street car and its passengers and himself in order to avoid the injury? Answer: No.

"9. If you answer the preceding issue 'yes' you need not answer this issue, but if you answer same 'no', then was such failure on the part of the motorman a proximate cause of the injury to plaintiff, if any? Answer: Yes.

"10. What sum of money if paid now in cash will fairly and reasonably compensate the plaintiff, Mrs. J. H. McAbee for the injuries received by her, if any, as a direct result of the collision of defendant's street car with her automobile if it did so collide on or about the 19th day of May, 1928? Answer: $2,500.

"In answering the foregoing special issue you may take into consideration the nature and extent of the injury sustained, if any, and the physical and mental pain and suffering of the plaintiff, caused thereby, if any, up to the present time—also her diminished capacity, if any, to perform her household duties up to the present time, and if you believe from the evidence that her injuries, if any, are of a permanent nature and that she will suffer from the same, in the future, then you may allow also such a sum as may reasonably compensate the plaintiff for such future pain and suffering and such future loss of capacity for the performance of her duties as you may believe, from the evidence, she will suffer in the future, if any. But as to each of these items herein mentioned for your consideration you will allow only such as you believe, if any, the collision of the defendant's street car with plaintiff's automobile was the proximate cause thereof.

"You cannot consider any injury that she has or may suffer from which was, or is the result of any previous operations, accidents, ills or injuries.

"11. Did the plaintiff, Mrs. J. H. McAbee, in backing out of the driveway, and on to the street car track, exercise that degree of care which would have been exercised by an ordinarily prudent person under the same or similar circumstances? Answer: Yes.

"12. Did the plaintiff, Mrs. J. H. McAbee, in allowing or permitting the automobile being operated by her to come to a standstill or stop on the defendant's street car track exercise that degree of care which would have been exercised by an ordinarily prudent person under same or similar circumstances? Answer: Yes.

"13. Did the plaintiff Mrs. J. H. McAbee, in failing to get out, or attempting to get out from the automobile, which she was occupying, after she realized that the street car was approaching her fail to exercise that decree of care which would have been exercised by an ordinarily prudent person under the same or similar circumstances? Answer: No.

"14. Did the plaintiff Mrs. J. H. McAbee, in depending entirely upon her own efforts to start her car, and relying upon the motorman to stop the street car before it collided with the automobile occupied by her fail to exercise that degree of care which would have been exercised by an ordinarily prudent person under the same or similar circumstances? Answer: No.

"15. Did the plaintiff Mrs. J. H. McAbee in backing out of the driveway of the Benson home and attempting to back across the street car track fail to use that degree of care which would have been exercised by an ordinary prudent person under the same or similar circumstances? Answer: No.

"16. Did the plaintiff Mrs. J. H. McAbee in attempting to back across the street car track before the approaching street car had passed, after she knew it was approaching, exercise that degree of care which would have been exercised by an ordinarily prudent person under the same or similar circumstances? Answer: Yes.

"17. Did the plaintiff in attempting to back her car across the street car track, or in permitting said street car [her car] to come to a standstill at the time she did and in the manner she did, and under circumstances in which the same was done, fail to exercise that degree of care which would have been exercised by an ordinarily prudent person under the same or similar circumstances? Answer: No.

"18. Did the plaintiff Mrs. J. H. McAbee, after knowing the street car was approaching, fail to exercise that degree of care which a person of ordinary prudence, under the same or similar circumstances would have exercised, in this, in failing to send her companion Raymond Schakelford out into the street to give her warning of the approach of the street car, or to give the street car motorman warning of her approach before she backed onto the track? Answer: No.

"19. Did the plaintiff Mrs. J. H. McAbee fail to exercise that degree of care which a person of ordinary prudence would have exercised under the same or similar circumstances, in this: After the car had stalled or stopped on the street car track, she realized that same would not start and then failing to get out and proceed up the track to timely notify the street car motorman of the presence of her car on the track? Answer: No.

"20. What sum of money, if any, will the plaintiff be forced and compelled to pay for treatment of the plaintiff Mrs. J. H. McAbee in the future, if any, which was directly and proximately caused by the collision of the defendant's street car with the plaintiff's automobile on or about May 10, 1928. Answer as you find the facts to be. Answer: Cannot be determined.

"If you have found in answer to any of the foregoing issues No. 11 to 19 inclusive, that the plaintiff Mrs. McAbee failed in either or any of the particulars therein inquired about to exercise that degree of care which would have been exercised by an ordinarily prudent person under the same or similar circumstances then state whether or not such failure to exercise such care upon her part was a contributing proximate cause of her injury? Answer: No."

The trial court submitted these issues at the request of defendant:

"1. Did the defendant's motorman exercise ordinary care to avoid a collision with the automobile in which plaintiff was riding or sitting after such motorman discovered plaintiff's peril? Answer: No.

"2. Did the defendant's motorman discover the dangerous position of the occupant of the automobile (Mrs. J. H. McAbee) and realize her peril, and realize that she would not probably be able to extricate herself therefrom in time so that, in the exercise of ordinary care, by the use of all the means at his command, consistent with the safety of the street car and its passengers, he could have avoided said collision? Answer: Yes.

"3. Did the defendant's motorman discover the dangerous position of the occupant of the automobile (Mrs. J. H. McAbee) and realize her peril, in time, by the use of all the means at his command, consistent with the safety of the street car and its passengers, to avoid a collision with said automobile? Answer: Yes.

"4. Was plaintiff Mrs. McAbee injured in consequence of an unavoidable accident, as that term is herein defined? Answer: No.

"5. Did plaintiff Mrs. McAbee discover that the motorman in charge of the car would not or could not in all probability stop the same in time to avoid the collision in time to have enabled her to alight from the car in which she was sitting? Answer: No.

"6. Was plaintiff Mrs. McAbee after she discovered that the motorman in charge of the defendant's car could not or would not in all probability, stop the same in time to avoid a collision with the car in which she was sitting, guilty of negligence, as that term is herein defined, in not alighting from said car? Answer: No.

"7. Was plaintiff Mrs. McAbee guilty of negligence as the court has defined that term, in failing to alight from the car in which she was sitting after it came to a standstill on defendant's track? Answer: No.

"8. What amount, paid now, would fairly and reasonably compensate plaintiff for the personal injuries, if any, received by plaintiff Mrs. J. H. McAbee, as set out and described in plaintiff's first amended original petition, during the early part of May, 1928, in consequence of the collision of one of defendant's street cars with the automobile which the said Mrs. J. H. McAbee then occupied, regardless of any other cause or condition, if any, which may have contributed thereto? Answer: $2,500.

"9. To what extent, if any, was plaintiff Mrs. McAbee suffering from the injuries, afflictions or infirmities involved herein at the time when she claims to have sustained the injuries complained of? Answer: To no extent."

The court further instructed the jury:

"You are instructed that the burden of proof in this case is upon the plaintiff to prove by a preponderance of the evidence, the affirmative to special issues numbers 1, 2, 4, 5–a, 6, 7 and 9, and the affirmative of special requested issues numbers 3 and 4; and the negative to special issues numbers 3, 5, and 8, and the negative to special requested issues 2 and 9; and the amount, if any, of special issues numbers 10 and 20, and the amount, if any, to special requested issue number 15.

"The burden of proof is likewise upon the defendant to prove by a preponderance of the evidence the negative to special isses numbers 11, 12 and 16, and the affirmative of special issues numbers 13, 14, 15, 17, 18, 19, and 21; and the affirmative to special requested issues numbers 10, 11, and 12, and the extent, if any, to special requested issue number 6. And you are instructed in this connection that if the parties plaintiff or defendant, as the case may be, have failed to prove such issues by such preponderance of testimony as herein indicated, you will answer the same to the contrary."

Upon the answers to the special issues submitted to the jury, the court gave a judgment for plaintiff and against defendant in the sum of $2,500, from which judgment the defendant has appealed.

## Opinion.

▟▙ The first and second propositions relate to the failure of the court to sustain defendant's general demurrer to plaintiff's first-amended original petition. It is urged that the petition shows on its face that Mrs. McAbee drove her car backwards out of the driveway and saw the street car approaching a block away, and, realizing the danger of being struck, nevertheless voluntarily proceeded to back her automobile out of the driveway into the street and across 21 feet of paved surface and then upon the street car track, realizing the street car was coming all the while; that the petition shows contributory negligence on her part, and therefore she could not recover on the allegations made in her petition.

We are of the opinion that the petition on its face tends to show contributory negligence on the part of Mrs. McAbee, and that the evidence does show contributory negligence, but the petition further alleges facts, which, if true, would have placed the plaintiff in a

position of discovered peril, and the evidence tends to prove the allegations of discovered peril. While the motorman testified he did not see the plaintiff's car until he was within 10 feet of it, yet the testimony of plaintiff, young Schakelford, and Mrs. Benson tended to show that the motorman was sounding his bell continually from the time he left the crossing of Ninth street and Baylor avenue, which was circumstantial evidence tending to show that he discovered the car on the track in plenty of time to stop with the means at hand, consistent with the safety of his passengers and himself. Therefore the first and second propositions are overruled.

■ The third and fourth propositions, treated together, complain of the action of the trial court in failing to sustain defendant's exception to the joinder of Mrs. McAbee as plaintiff in this suit. The contention is made that, under the State Constitution, art. 16, § 15, a recovery for personal injuries to the wife is community property, and the courts have so held. This section reads as follows: "All property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterward by gift, devise or descent, shall be her separate property; and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property as that held in common with her husband. Laws shall also be passed providing for the registration of the wife's separate property."

That the recovery for personal injuries to the wife does not constitute part of the wife's separate estate, see Teague v. Fairchild (Tex. Com. App.) 15 S.W.(2d) 585; Western Union Tel. Co. v. Campbell, 36 Tex. Civ. App. 276, 81 S. W. 580.

Article 4615, Rev. Statutes of 1925, provides: "All property or moneys received as compensation for personal injuries sustained by the wife shall be her separate property, except such actual and necessary expenses as may have accumulated against the husband for hospital fees, medical bills and all other expenses incident to the collection of said compensation." This last-quoted statute has been held unconstitutional. See Fairchild v. Davis (Tex. Civ. App.) 295 S. W. 640; Northern Texas Traction Co. v. Hill (Tex. Civ. App.) 297 S. W. 778.

But we see no injury to the defendant by the joinder as party plaintiff of Mrs. McAbee, and, where no injury is shown, the courts hold that no reversible error is presented. See San Antonio St. Ry. Co. v. Helm, 64 Tex. 147; Galveston, H. & S. A. Ry. Co. v. Baumgarten, 31 Tex. Civ. App. 253, 72 S. W. 78. Therefore the assignments are overruled.

■ In the fifth and sixth propositions, grouped, complaint is made of the failure of the trial court to designate or identify by description, or the date of filing, the original petition, which the amended petition purport-

ed to substitute. Under district and county court rules 3 to 13, requiring original pleadings to show respective positions in process of pleading, and requiring amendments and supplemental pleadings to show instrument amended or supplemented, amended pleading should identify pleading for which it is substituted by giving date of its filing and date of original pleading, and it has been held that a failure in this particular renders pleading subject to special exception. Rockhold v. Lucky Tiger Oil Co. (Tex. Civ. App.) 4 S.W.(2d) 1046, writ of error dismissed. In the cited case the court held that the failure upon the part of all the parties to observe the rules referred to resulted in much confusion in briefing the case and entailed considerable extra labor upon the court in an effort to outline the issues upon which the case was tried and to make a correct statement of the nature and result of the suit.

But in the case of German Ins. Co. v. Norris, 11 Tex. Civ. App. 250, 32 S. W. 727, 728, by this court, speaking through Chief Justice Tarlton, it is held: "We overrule the appellant's assignment of error first urged, complaining of the action of the court in not sustaining the general and special exceptions in defendant's third supplemental answer, directed to plaintiff's trial amendment filed November 23, 1893. While it is true that the trial amendment did not refer by name or number to the pleadings sought to be amended, and was thus violative of rule 27, governing the proceedings in the district and county court, it is as manifest that the pleading sought to be amended was the plaintiff's amended original petition as if the latter pleading had been mentioned by name or number. It is apparent that the ruling in no way prejudiced appellant, and that a reversal on account of it would be idle. The trial amendment covered the defects adjudged on exception by defendant to exist in plaintiff's amended original petition, and supplied with succinctness the averment of facts omitted in that pleading, and which we find it unnecessary to enumerate."

We do not see that appellant was prejudiced, and therefore do not feel that a reversal by reason of the ruling of the trial court should follow. Lumsden v. Jones, 205 S. W. 375, by the Amarillo Court of Civil Appeals, the same court that decided the case of Rockhold v. Lucky Tiger Oil Co., supra.

The seventh and eighth propositions complain of the failure of the trial court to sustain a special exception directed to the allegations of plaintiff's amended original petition, showing that Mrs. McAbee, while backing out of the driveway in the automobile, saw and heard a street car coming in her direction, but nevertheless she continued to back her car out of the driveway and onto the street car track where she was struck, thereby showing contributory negligence on

her, part as a matter of law. While we think, as before stated, that the petition tended to show and the evidence tended to show that Mrs. McAbee was guilty of contributory negligence, yet the court had the right to try, and it was its duty to try, the issue of discovered peril.

■■ In propositions 19 to 20, grouped, the contention is made that under the circumstances shown in this case the definition of proximate cause given by the trial court was insufficient and improper. The court defined proximate cause as follows: " 'Proximate cause,' as used in this charge, is meant that cause which in a natural and continuous sequence unbroken by any new independent cause produces the event complained of and without which that event would not have occurred; there may be more than one proximate cause of an event."

The defendant below objected in writing to the definition given to "proximate cause," because said definition entirely omits the element of "foreseeableness," and that same should include such element.

In Texas & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, 163, it is said: "The negligence must be the proximate cause of the injury. But the word 'proximate' is not happily used in that connection. In ordinary language, a proximate cause is the nearest cause; but, in a legal sense, an act of negligence may be deemed a proximate cause of an injury, although it may not be the last cause in a connected succession of events which have led to a result. It is usually laid down, in cases of negligence, that, in order to constitute the proximate cause of an injury, the injury must be the natural and probable result of the negligent act or omission. Since every event is the result of a natural law, we apprehend the meaning is that the injury should be such as may probably happen as a consequence of the negligence, under the ordinary operation of natural laws. The rule is sometimes put upon the ground that to allow a recovery for injuries resulting from remote causes would lead to intolerable litigation, and this seems to be indicated in Bacon's paraphrase of the maxim quoted above: 'It were infinite for the law to consider the causes of causes, and their impulsions one of another. Therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking for any further degree.' But it seems to us that as applied to the law of negligence, at least, a better ground for the rule is that a party should not be held responsible for the consequences of an act which ought not reasonably to have been foreseen. In other words, it ought not to be deemed negligent to do or to fail to do an act when it was not anticipated, and should not have been anticipated, that it would result in injury to any one. To require this is to demand of human nature a degree of care incompatible with the prosecutions of the ordinary avocations of life. It would seem that there is neither a legal nor a moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed. 'It can hardly be negligent not to provide against what no one can anticipate,' says Blackburn, J., in Smith v. Railway Co., L. R. 6 C. P. 14. And again: 'If a man fires a gun across a road where he may reasonably anticipate that persons will be passing, and hits some one, he is guilty of negligence and liable for the injury he has caused; but if he fires in his own wood, where he cannot reasonably anticipate that any one will be, he is not liable to any one whom he shoots, which shows that what a person may reasonably anticipate is important in considering whether he has been negligent; but if a person fires across a road when it is dangerous to do so, and kills a man who is in receipt of a large income, he will be liable for the whole damage, however great, that may have resulted to his family, and cannot set up that he could not have reasonably expected to have injured any one but a laborer.' "

We think that, in the definition of "proximate cause," the court should have instructed the jury that an act is a proximate cause of an injury when the injury is the natural and probable consequence of a negligent and wrongful act, and which, in the light of attending circumstances, should have reasonably have foreseen.

In Robertson & Mueller v. Holden, 1 S.W. (2d) 570, by the Commission of Appeals, this definition of "proximate cause" was accepted as being proper: "A proximate cause is that cause which in a natural and continuous sequence, unbroken by any new independent cause, produces an event, and without which that event would not have occurred, and to be the proximate cause of an event it must have been reasonably anticipated by a person of ordinary prudence that the injury or some similar injury would occur. There may be more than one proximate cause of an event."

See Eames v. T. & N. O. Ry. Co., 63 Tex. 660; Gulf, C. & S. F. Ry. Co. v. Rowland, 90 Tex. 365, 38 S. W. 756; Neal v. Northern Texas Traction Co., 258 S. W. 877, by this court; Haney v. T. & P. Coal Co. (Tex. Civ. App.) 207 S. W. 375.

Nor do we think the omission becomes immaterial by reason of the fact that the court gave other instructions and special issues as follows:

"7. Did the defendant's motorman on the street car which collided with the plaintiff's automobile at the time in question discover the dangerous position of the occupants of the automobile and realize their peril and realize that they would not probably be able to extricate themselves therefrom so that in the exercise of ordinary care by the use of

all means at his command consistent with the safety of the street car and its passengers and himself he could have avoided the collision?"

"8. If you answer the preceding issue 'No,' then you need not answer this issue, but if you answer the same 'Yes,' then did the motorman in question after he was apprized of the fact as shown by your affirmative 'Yes,' answer to the preceding cause, if you did so find, exercise ordinary care to use all of the means at his command consistent with the safety of the street car and its passengers and himself in order to avoid the injury?"

"3. Did the defendant's motorman discover the dangerous position of the occupant of the automobile (Mrs. J. H. McAbee) and realize her peril, and realize that she would not probably be able to extricate herself therefrom in time so that, in the exercise of ordinary care, by the use of all the means at his command, consistent with the safety of the street car and its passengers, he could have avoided said collision?"

Appellee contends that, since the jury found in response to the special issues submitted that the motorman discovered the dangerous position of appellee and realized her peril, and realized that she would not be able to extricate herself therefrom in sufficient time, and that, by the exercise of ordinary care and by the use of all the means at his command, consistent with the safety of the street car and its passengers and himself, he could have avoided the collision, and that he did not exercise such ordinary care, then, as a matter of law, the motorman ought reasonably to have foreseen the ultimate consequences, and therefore the failure to exercise ordinary care is in law deemed to be the proximate cause of the injury.

We do not think that the fact that the court gave other instruction in his charge, and submitted other issues, which, answered as they were, tended to show that the motorman did not exercise ordinary care after discovering the dangerous position of the car and its occupants, cured the omission in the definition of "proximate cause" complained of, and that such failure to so include the element of "foreseeableness" constitutes reversible error.

■■ Propositions 27 to 33, inclusive, complain of the failure of the trial court to define the term "under control," in issue No. 5, submitted to the jury as follows: "Did the operator of the street car in question just prior to the collision of the street car with the automobile have said street car under control?"

From the evidence in the case, it is evident that the street car motorman did have the street car under control for certain purposes and under certain limitations. He could and did stop the car within 10 feet, as testified to by Mrs. McAbee's nephew, Raymond Shakelford, after coming in collision with the automobile, or within 40 or 60 feet, as testified to by the motorman. The motorman, Roscoe Tabor, testified, by deposition:

"I first saw the automobile when I was about 10 or 15 feet from it, it was on the left, right at the track. When I saw the car it was about even with the rails. I could not see it until I got within 10 feet of it. The reason I did not see it was because the lights and the rain prevented me from seeing it, I am talking about automobile lights that were coming, facing me on that same side, coming from town. I could not see it because the lights blinded me, that is the glare of the lights on the windows. I had the windows up. There was no shade on the windows. I had a shade behind me; I did not have anything to wipe off the glass. The company does not have rags to wipe off the glass. And if the rain fell on the glass I just could not see and that is what happened that night.

"I could not see the automobile until I was within 10 feet of it, I was going about 18 miles per hour. I could not see over 10 feet ahead of me. I could not stop quick enough going 18 miles an hour when I saw her. I could not have stopped within 40 or 50 or 60 feet. I was coming down that track and I could not stop my car within 50 or 60 feet, somewhere in that neighborhood. I stopped within a car length after I hit her, about one car length after I hit her. My left side of the car hit her left side. When I stopped her car was still on the front end of my car, it was turned a little, not much. It is not true that the front end was facing me when we stopped. The rear end did not face me, it was turned a little.

"If I had had that glass down I guess I could have seen. If I had had that glass fixed so that when the rain hit it it would not stay on it, I guess I could have seen. I could not have seen any further, and I did not see any further than I have stated here, my vision was limited to the way I have just stated, and I was coming that rate of speed that I have stated."

Words and Phrases defines "under full control," used in a railroad company's rules requiring trains to approach and pass through yards "under full control" as understood by railroad men, as meaning ready to stop at any moment. Neary v. Northern Pac. Ry. Co., 37 Mont. 461, 97 P. 944, 19 L. R. A. (N. S.) 446.

We think that, by the term "under control," as applicable to issue No. 5, is meant that the motorman, by the means at his command and by the use of due diligence, could so lessen the speed of his car, or even stop it if necessary, to avoid the danger of a collision with or injury to any person or thing he could have anticipated or foreseen as probably being on or near the track. By the doctrine of discovered peril is meant

that, where danger of inflicting an injury is discovered by the person inflicting it in time to have prevented the injury by the exercise of proper care, he will be liable for injury proximately resulting from his negligence, though the injury would not have occurred but for the previous negligence of the person injured. Furst-Edwards & Co. v. St. L. Southwestern Ry. Co. (Tex. Civ. App.) 146 S. W. 1024; Missouri, K. & T. Ry. Co. v. King (Tex. Civ. App.) 123 S. W. 151.

Some of us are of opinion that the issue of whether or not the motorman of the street car had the car under control should not have been submitted, because that was merely a matter of evidence pertinent to the issue that was submitted as to whether or not after discovery of plaintiff's peril, he (the motorman) used all the means available to avoid the accident.

In another proposition complaint is made of the trial court in failing and refusing, upon request, to define not only "under control," but "peril," "position of peril," and "reckless and dangerous speed." As authority for the duty of the trial court to define in plain words legal or technical terms not in general use or generally understood by persons of ordinary education, see article 2189, Rev. Statutes of 1925; Texas Pacific Coal & Oil Co. v. Stuard et ux., 7 S.W.(2d) 878, by the Eastland Court of Civil Appeals; Southern Surety Co. v. Solomon, 4 S.W.(2d) 599, by the Austin Court of Civil Appeals; Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W. (2d) 570.

There are a number of other assignments and propositions, there being 82 propositions contained in appellant's brief, based on 60 assignments of error, but we believe that we have discussed all of the propositions necessary and discussed all errors likely to arise in another trial.

For the reasons stated, the judgment of the trial court is reversed, and the cause is remanded for another trial not inconsistent with this opinion.