## TEXAS PIPE LINE CO. v. WATKINS et al.
### No. 1861.

Court of Civil Appeals of Texas. Beaumont.

March 24, 1930.

Wm. E. Loose, of Houston, and V. E. Middlebrook, of Nacogdoches, for appellant.

Russell & Ellington, of Nacogdoches, for appellees.

HIGHTOWER, C. J.

The appellant, Texas Pipe Line Company, initiated this controversy by filing with the county judge of Nacogdoches county its petition seeking to condemn a right of way for its pipe line over two contiguous tracts of land owned by appellees aggregating 230 acres. Upon presentation of the petition for condemnation to the county judge, he, in accordance with the statute, appointed special commissioners to assess the damages that might be sustained by appellees in consequence of the condemnation. The commissioners so appointed proceeded in due time to have a hearing in the matter, and after doing so returned their award in favor of the appellees for the aggregate amount of $234.90. Thereupon appellant, proceeding in accord with our statute, filed the necessary statutory bond and commenced the construction of its pipe line. Appellees were dissatisfied with the amount of damages awarded them by the special commissioners and in due time filed their exception to the award on the ground that the amount awarded them as damages was insufficient and inadequate to compensate them for the value of the land actually taken and the damages to the remainder of their tract. Thereafter, in the county court, both parties amended their pleadings, and a trial was had with a jury, and in answer to special issues the jury found that appellees were entitled to damages in consequence of the condemnation of their land in the aggregate amount of $650. Upon the verdict as returned, the county judge entered judgment in favor of appellant condemning the land sought by it for pipe line purposes and also entered judgment in favor of appellees for $650 as damages sustained by them in consequence of the construction of appellant's pipe line. Appellant, in due time, prosecuted this appeal from the judgment against

1104

it for damages, assailing the verdict and judgment on a number of grounds.

No question is raised as to the right of appellant to condemn the land of appellees for pipe line purposes, and the only question raised in the trial court was as to the amount of damages that appellees were entitled to recover in consequence of the condemnation.

Appellant's first contention, which is raised by its first and second propositions, is in substance that the amount of damages awarded by the jury's verdict in favor of appellees was grossly excessive. Since we have concluded that the judgment in this case must be reversed on other grounds, we shall not discuss or decide appellant's contention that the jury's verdict as to the amount of damages in favor of appellees was excessive, but will leave that question open for determination upon another trial, if one be had.

■ In their cross-action in the county court appellees alleged in substance that the reasonable cash market value of their land condemned by appellant immediately before the construction of appellant's pipe line across the same was $8,000, and that the reasonable cash market value of their land immediately after the construction of appellant's pipe line across the same was $7,000. The only issues submitted for the jury's consideration were as follows:

Special issue No. 1: "What was the reasonable fair cash market value of defendants' tract of land involved in this suit immediately before the construction of plaintiff's pipe line? Answer in dollars and cents."

Special issue No. 2: "What was the reasonable fair cash market value of defendants' land involved in this suit immediately after the construction of plaintiff's pipe line? Answer in dollars and cents."

The jury's answer to special issue No. 1 was $9,200, and the answer to special issue No. 2 was $8,550. It is clear from the jury's answer to special issue No. 2 that they found that the land of appellees involved in this suit was worth $550 more immediately after the construction of appellant's pipe line than it was worth before the construction of the pipe line, according to appellees' own pleading in this case. This being so, appellant, by its third proposition, challenges the verdict and judgment on the ground that they are not supported by the pleadings in the case. After due consideration of this contention, we have reached the conclusion that it must be sustained. We are unable to escape the conclusion that appellees were bound by their allegation in their cross-action that their land involved in this case was worth only $8,000 before the construction of appellant's pipe line, notwithstanding the fact that the jury has found that their land was worth $9,200. It seems to us, for this reason, that the verdict and judgment are fundamentally erroneous because without support in this respect in the pleadings, and we sustain this proposition.

■ Under its fourth proposition it is contended by appellant that the trial court committed error in failing and refusing to submit to the jury any definition of the term "reasonable fair cash market value" to guide the jury in their answers to special issues Nos. 1 and 2. It is appellant's contention in this connection that the term "reasonable fair cash market value" is a legal and technical term, and that it was necessary that the trial court define this term in order that the jury's answers to special issues Nos. 1 and 2 might be intelligently and understandingly made. Appellant objected in due time to the charge of the court because this term was not defined, and the court overruled the objection. Learned counsel for appellees contend, in this connection, that the term "reasonable fair cash market value" is not a legal term at all, but that if it is a legal term there was no necessity for the court's defining it to the jury because, as counsel contend, the term is used so much in everyday language that the jury must have understood its legal meaning, and that therefore no prejudice resulted to appellant on account of the court's refusal to define the term. Article 2189, Rev. St. 1925, provides as follows: "In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues." Our appellate courts have had this statute under construction quite a number of times, and in nearly every instance the trial court's failure to properly define a legal term for the guidance of the jury in answering special issues was held to be reversible error. We have no doubt that the term "reasonable fair cash market value" is a legal term of well-defined meaning, and that it was the duty of the trial court, under article 2189, supra, to define the term in order to properly guide the jury in answering special issues Nos. 1 and 2. In the fairly recent case of Texas Pacific Coal & Oil Co. v. Stuard (Tex. Civ. App.) 7 S.W.(2d) 878, it was held that the failure of the trial court to define the terms "due diligence" and "paying quantities" was reversible error, for the reason that both those terms are legal terms and should have been defined for the jury's guidance in answering special issues in that case. See also Robertson v. Holden (Tex. Com. App.) 1 S.W.(2d) 570; Wichita Falls Traction Co. v. McAbee (Tex. Civ. App.) 21 S.W.(2d) 97.

■ It is further well settled by the decisions of our appellate courts that a specific objection to a charge because of a failure to properly define a legal term used in the charge, is sufficient to require the trial court to cure the omission, and it is not incumbent

upon the objecting party to tender a requested correct charge. Wichita Valley Railway Co. v. Williams (Tex. Civ. App.) 3 S.W.(2d) 141, 143; Texas Pacific Coal & Oil Co. v. Stuard, supra; Robertson v. Holden, supra. The writer, speaking for himself, is of the opinion that some of our appellate courts have gone too far in reversing trial courts for failure to define to a jury certain legal terms, but in a number of cases our Commissions of Appeals have held that the trial court was in error in failing to define for the guidance of the jury terms that had a well-fixed legal meaning but just as simple and easily understood by a layman or the average juror as would be the term "reasonable fair cash market value." Therefore we hold that appellant's fourth proposition presents reversible error in this case and we must sustain it.

[redacted] By its fifth proposition appellant contends that the court should have sustained its exception and objection to the charge for the reason that the reasonable fair cash market value of defendants' land involved in this suit immediately before and immediately after the construction of the pipe line was not the correct measure of damages, and that the correct measure of damages was the difference in the reasonable fair cash market value of defendants' land immediately before the construction of the pipe line and at the date of the trial. Upon the facts in this case appellant's fifth proposition should be overruled. Southwestern Telegraph & Telephone Co. v. Smithdeal, 104 Tex. 258, 136 S. W. 1049; Fort Worth & R. G. Railway Co. v. Garvin (Tex. Civ. App.) 29 S. W. 794. The court was correct in applying the measure of damages as he did in this case, and this proposition is overruled.

[redacted] Upon the trial of this case below appellant offered the testimony of some ten or twelve witnesses to show what effect, if any, the construction of a pipe line, such as appellant's pipe line in this case, had had upon lands owned by these witnesses and put to such use as appellees' land in this case was used for. The bills of exception in this connection show that these witnesses owned lands over which pipe lines like appellant's here had been constructed for a number of years, and appellant sought to prove by them that the presence of the pipe lines on their land had never interfered in the least with the cultivation of the lands and had not been of any inconvenience whatever to these witnesses in the use of their lands, and appellants offered to prove by some of them that they knew of no instance in which the market value of their lands had been affected on account of the presence of the pipe lines. This testimony was objected to by appellees on the ground, mainly, that it was wholly immaterial and related to lands different from that involved in this suit, and these objections were sustained and proper bills saved to the ruling of the court. We are of the opinion that the court should have permitted appellant to prove by these witnesses what effect, if any, the presence of pipe lines over their lands had had upon their use of their lands for the reason that we are of the opinion that such testimony was proper to be considered by the jury in determining the amount of damages, if any, sustained by appellees in this case on account of the presence of appellant's pipe line over their land, and upon another trial, if one be had, the court should permit the testimony tendered by appellant to this extent. It was offered to be shown by appellant that each of these witnesses were thoroughly familiar with the manner in which pipe lines like appellant's were constructed and maintained, and they were in position to observe, and had observed, the effect that the presence of pipe lines had had upon the use of their lands, and we see no sound reason why this character of testimony should not be considered by the jury in determining the amount of damages sustained by appellees in this case, which is the only issue involved.

Appellant makes the further contention that the trial court committed error in overruling its objection to the evidence of appellees' witness C. B. Watkins as to his opinion touching the difference in value of appellees' land before and after the construction of appellant's pipe line, the objection being that the witness was not shown to be qualified to give his opinion on that point. We have read the testimony in full of Mr. Watkins, as found in the statement of facts in this case, and we seriously doubt whether he was shown to be qualified to give his opinion in this connection. Upon another trial if this witness cannot be shown to be better qualified to give his opinion on this point than he was shown to be upon this trial, it is our opinion that the trial court should exclude his testimony.

What we have said has the effect to dispose of all contentions made on this appeal, and it follows from the conclusions expressed that the judgment should be reversed and the cause remanded, and such has been our order.