## TIDAL WESTERN OIL CORPORATION v. BLAIR.

### No. 3579.

Court of Civil Appeals of Texas. Amarillo.

June 3, 1931.

Bonner, Bonner & Childress, of Wichita Falls, for plaintiff in error.

Martin & Oneal, of Wichita Falls, for defendant in error.

JACKSON, J.

This case originated in justice court, precinct No. 2, Wichita county, Tex., and on appeal to the county court of said county, the defendant in error, I. H. Blair, obtained a judgment against the plaintiff in error, Tidal

Western Oil Corporation, for the sum of $200, from which judgment, by writ of error, the Tidal Western Oil Corporation, hereinafter called appellant, prosecutes this appeal.

The defendant in error, designated herein as appellee, alleged that about April 10, 1929, he resided upon certain lands in Wichita county, Tex., a part of which he cultivated and the balance of which was grazing land upon which he pastured his seven head of Jersey milch cows and other live stock. That in addition to his occupation as a farmer, he supported his family from milk and butter obtained from his said milch cows. That a branch ran through his pasture where his milch cows grazed, from which branch his cows obtained drinking water. That appellant, a corporation, engaged in the oil business, maintained an oil refinery, storage tanks, and pipe lines in connection with its business, all of which were located near and adjacent to appellee's farm and pasture. That on or about April 10, 1929, appellant's pipe line attached to and leading from one of its 50,000-barrel storage tanks broke, permitting large quantities of live oil to run out of said tank and pipe line and flow into the branch extending across appellee's pasture where his cows grazed. That his said cows drank such live oil. That one of said cows, of the reasonable market value of $125, died from the effects of drinking the oil. That two other of his said milch cows which would have been fresh in milk the following May drank the oil which had escaped from appellant's pipe line and the effect thereof caused them to abort their calves, as a result of which they produced no milk. That but for such condition, each of said cows would have produced 2½ gallons of milk per day for a period of 8½ months, from which appellee would have received a profit selling such milk and butter therefrom for its reasonable market value, the loss of which damaged appellee, the details of all of which he sufficiently pleads. He also alleges that each of the calves prematurely born would have been, at the time of their birth, of the reasonable market value of $25, and that by reason of the wrongful death of such calves, he was damaged in the sum of $50.

That the breaking of appellant's pipe line and the oil escaping therefrom and flowing into the branch in appellee's pasture was caused by and due to the negligence of appellant in pumping the oil with too much force for the strength of the pipe line and forcing the oil through said line against closed valves, failing and refusing to cut off the power of the pump after the line was broken, and in failing to cut off the flow of the oil through the line after the break, refusing to repair it, and failing to make any effort to prevent the oil from running upon appellee's land by impounding it. That on account of such carelessness and negligence, the oil flowed upon and remained on appellee's land, where it was drunk by appellee's milch cows and caused the damages which he sustained, and that such negligence was the direct and proximate cause of such damages.

The appellant answered by general demurrer, numerous special exceptions, and general denial, and pleaded that any damages sustained by appellee was due to the fact that his milch cows were suffering from some disease independent of drinking oil and that such disease was the cause of appellee's damages. That the water in the branch was not suitable for the cattle to drink, regardless of the oil therein. That appellee knew of the breaking of appellant's pipe and the escape of the oil therefrom into the branch and upon his land and permitted his cattle to run at large in the pasture, knowing that they would drink the oil and be injured thereby. That he placed an obstruction across the branch and prevented the oil from flowing and escaping from his land, and he was guilty of contributory negligence which defeats his right of recovery.

The appellant also pleaded affirmatively that it used due diligence to repair its pipe line and protect the appellee from suffering any damages by reason thereof.

In response to special issues submitted by the court, in so far as necessary to a disposition of this appeal, the jury found, in substance, that appellant was guilty of negligence in permitting the oil to escape from its pipe line onto appellee's land; that the cows drank the oil; that the cow that died was of the reasonable cash market value of $125; that the reasonable cash market value near the farm at Burkburnett, in May, of the calves had they been born at the proper time, was $15 each; that appellee would have made a profit of $100 from the sale of milk produced from the two injured cows, over and above the reasonable market cost of handling such milk; and that the negligence of appellant was the proximate cause of all of appellee's damages. On these and other findings judgment was rendered in favor of appellee for the sum of $200 with interest at 6 per cent, from the date thereof.

The appellant urges as error the action of the trial court in failing to define the term "reasonable cash market value" contained in special issue No. 5, because such term is a legal term and should have been defined by the court.

In issue No. 5 the court submitted to the jury, "what is the reasonable cash market value" of the three year old cow that died on the 10th of April, 1929, on appellee's land? The appellant objected to the submission of this issue because "reasonable cash market value" was not defined by the court and is a legal phrase or term that should be defined.

Article 2189, R. C. S., among other things,

provides: "In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

38 C. J. 1261, § 17, is to the effect that: "While the usage of trade has given a fixed and technical meaning to 'market value'" and "market value" is difficult to determine, not easy to define; and in some jurisdictions is considered plain, definite and well understood, but "the term is one which has been defined in its various applications in many decisions." This announcement is followed by the author with numerous definitions of "market value," given by various courts.

In section 18, p. 1262, this author continues: "Just what elements go to make up market value depends largely upon the facts and circumstances surrounding the particular case. There is no inflexible rule. 'Market value' implies the existence of a market, that is, a demand or want. It relates to buying and selling. Market values are created and controlled by the condition of the market with reference to supply and demand. So market value is ordinarily arrived at by conclusions deduced from transactions in commodities or property of the same or a like character. But such transactions must occur under ordinary and normal conditions, in the market generally, in open market, on fair competition, for cash, or on such time and terms as would be equivalent to cash, unaffected by elements which enter into transactions made outside the usual course of business, irrespective of peculiar circumstances. So it must be determined by the price for which a willing owner would sell and a willing purchaser would buy, but neither being under any obligation to do so."

"The measure of damages for property destroyed is the market value of the property at the time and place where destroyed. * * * And in such cases it is the duty of the court to instruct the jury as to what is the legal meaning of market value." Texas & P. Ry. Co. v. Williams, 1 White & W. Civ. Cas. Ct. App. 250.

In Texas Pipe Line Co. v. Watkins et al., 26 S.W.(2d) 1103, 1104, Judge Hightower, for the Beaumont Court of Civil Appeals, in considering the court's failure to define in his charge the term "reasonable fair cash market value" to guide the jury in answering special issues, after stating the contentions of appellant and appellee, which are identical with the contentions made in this case, quotes the language from article 2189 supra, and continues: "Our appellate courts have had this statute under construction quite a number of times, and in nearly every instance the trial court's failure to properly define a legal

term for the guidance of the jury in answering special issues was held to be reversible error. We have no doubt that the term 'reasonable fair cash market value' is a legal term of well-defined meaning, and that it was the duty of the trial court * * * to define the term in order to properly guide the jury in answering special issues Nos. 1 and 2." Citing numerous authorities.

In view of appellant's objection and exception to the court's failure to define "reasonable cash market value," the numerous elements that go to make up market value, that its meaning is largely dependent on the facts and circumstances in each case, and the authorities noted, we are constrained to hold that "reasonable cash market value" is a legal term or phrase and that the court committed reversible error in failing to advise the jury of its meaning so as to guide the jury in determining the market value of the animal in question.

Appellant, having objected to the court's failure to define the language "reasonable cash market value," was not required to tender in a special charge a definition thereof. Texas Pipe Line Co. v. Watkins, supra. See, also, Gulf, C. & S. F. Ry. Co. v. Conley et ux., 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183.

This assignment is sustained.

The appellant presents as error the action of the court in failing to submit certain affirmative defenses urged by it on the trial of the case, but the record fails to disclose that appellant prepared and tendered to the court any special issue on such affirmative defenses and they are therefore presumed to be waived and abandoned. Ormsby et al. v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

The testimony was sufficient to require the submission of this case to a jury. We deem it unnecessary to discuss various other assignments presented by appellant, because, if error is presented in any of them, it will, in all probability, not occur on another trial.

We note that the court permitted the appellee to recover what the market value of unborn calves would have been in May, following the injury of their mothers in April from drinking the oil. In connection with this action of the court, we call counsels' attention to the holding in Texas & P. Ry. Co. v. Randle, 18 Tex. Civ. App. 348, 44 S. W. 603, to the effect that damages are not recoverable for negligently causing the death and premature birth of a colt, because remote and speculative.

The judgment is reversed, and the cause remanded.